PALESTINE WATER AND POWER COMPANY v. CITY OF PALESTINE.

No. 617.—Decided March 7, 1898.

**1.   Franchise—Forfeiture—Conflict of Jurisdiction—Receiver.**

The institution by a city of a suit to forfeit, for failure to comply with contract, the franchises granted by ordinance to a water company, gave the State court jurisdiction of the subject matter, and the subsequent appointment of a receiver for the company by the Federal court did not make it necessary that he be made a party to such suit.   (P. 546.)

**2.   Water Company—Use of Streets—Forfeiture—Case Distinguished.**

A city can maintain suit to forfeit the franchise given by ordinance to a water company to lay pipes, etc., in public streets, on failure of the company to comply with its contract to furnish pure and sufficient water.   The different laws under which such companies and railroads acquire rights in city streets and the difference in the purposes of the two corporations distinguish such case from Railway v. City of Galveston, 90 Texas, 398.   (Pp. 546-548.)

**3.   Franchise—Forfeiture—Waiver.**

A contract by which a city reserved the right to forfeit the "exclusive" franchises granted thereby to a water company, in case of its failure to comply with its undertakings, was not a waiver of any right of action to forfeit the company's franchises which the city might have independently of the terms of such contract.   It seems, the city council has no authority to waive the right of the public to revoke a franchise which has been abused by the grantee.   (P. 547.)

**4.   Same—Estoppel.**

A submission to and adverse vote by the citizens upon a proposition that the city establish and maintain its own system of water works, did not estop the city from suing for forfeiture of franchises granted to a water company.   (P. 548.)

**5.   Water Company—Pipes in Street—Municipal Regulation.**

The right of a water company, under Rev. Stats., art. 705, to lay pipes in the streets was derived from the consent of the city, which for sufficient cause might be revoked.   (P. 548.)

**6.   Forfeiture—Franchise—Exclusive or Entire.**

Where a water company failed to perform its obligations to the city to furnish clear and wholesome water, furnishing such as endangered the health and lives of the inhabitants, it was proper, at suit of the city, to forfeit its entire franchise, though the terms of its contract provided only for the forfeiture of its "exclusive" rights in that event.   (Pp. 548 to 549.)

**7.   Forfeiture—Non-Performance—Offer to Perform.**

Where such company had failed, in spite of repeated remonstrance, to comply with its contract till after suit for forfeiture, an offer to comply, made then and without showing ability, would not prevent the forfeiture.   (Pp. 550, 551.)

ERROR to the Court of Civil Appeals for the First District, in an appeal from Anderson County.

*B. H. Gardner, A. W. Gregg, Jno. Young Gooch* and *J. A. Reed,* for plaintiff in error.—The court erred in overruling defendant's motion to make the receiver of the defendant (The Palestine Water and Power Company), appointed by the United States Judge of this district, on April 18, 1896, a party to this suit.   5 Thompson Corp., secs. 7135, 6894; Wilson v. Wilson, 1 Barb. Ch., 592.

The judgment of the court is erroneous because it forfeits vested rights, which are charter rights, without having made the State of

Texas a party,—that is, the right to use the streets, alleys and public grounds of the city of Palestine for carrying on its business of operating water works without which the charter rights cannot be exercised. Sayles' Stats., art. 629; Rev. Stats. (1895), arts. 705, 706, 408; Railway v. City of Galveston, 39 S. W. Rep., 96.

The judgment is erroneous in this, that it decrees that defendant shall cease to use the streets, alleys or public grounds of the city of Palestine for carrying on its business of operating water works after the expiration of sixty days from a written demand by the city council, because it is shown that the property and franchise of appellant is in the hands and possession of H. L. Wright, a receiver appointed by the Federal Court, having jurisdiction of the subject matter and parties, and that said receiver is not a party to this suit, and that appellant has not the power to control the matter. 5 Thompson, Corp., secs. 6855-6863; Leadville Coal Co. v. McCreery, 141 U. S., 475; Wilmer v. Railway, 2 Wood, U. S., 409.

The judgment is erroneous in that it forfeits the right of appellant to use the streets of Palestine, which right is granted by the Legislature upon the city granting its consent. The city after having granted such consent is, by the judgment in this case, permitted to withdraw and forfeit such right upon a condition subsequent attached to the grant of consent, which is erroneous. Rev. Stats., art. 705; 20 Am. and Eng. Encycl., Law, 723; Brooklyn v. Jourdan, 7 Abb. New Cases, 23; Railway v. City of Galveston, 39 S. W. Rep., 96; Appeal of City of Pittsburg, 115 Pa. St., 4; In re Kings County Elec. Ry. Co., 105 N. Y., 97; Railway v. City of Leavenworth, 1 Dill., 393.

"The judgment is erroneous because it attempts to deprive the appellant of the use of its water mains, pipes and plant, and of the water mains, pipes and plant themselves, which are immovable fixtures, without compensation, and said judgment makes no provision for their use, removal or sale, after sixty days notice." Sayles' Stats., art. 629; Rev. Stats., art. 705; Railway v. City of Galveston, 39 S. W. Rep., 96.

The court erred in its conclusions of law in holding that, upon a failure of defendant to comply with the contract as to quality or quantity of the water, the city had the right to invoke the aid of a court of equity to rescind the contract; because, by the terms of the contract, the said ordinances and contract were made the measure of the right and liabilities of the parties, and said ordinance and contract provided the penalty for said failure as follows: That if said grantee, or his assigns, "shall suffer a suspension of the supply of water, thereby causing an insufficient supply of clear, wholesome water for domestic and other purposes, for a period exceeding sixty days, then, and in that event, the said grantee and his assigns shall forfeit all exclusive franchises herein granted, and during such suspension all water rentals shall be suspended." Same authorities, also State ex rel. Gussett v. Morris, 11 S. W. Rep., 392, 65 Texas, 53, 62 Texas, 742; State v. Railway, 24 Texas, 131; State v. Turnpike Co., 41 Am. Dec., 690; Boone, Corporations, sec.

203; Milford, etc., Co. v. Brush, 36 Am. Dec., 78; State v. Bank of Charleston, 39 Am. Dec., 135; 2 Addison, Contracts, sec. 720.

The court erred in the conclusions of law, in holding that the city had not waived its right of forfeiture and elected to have the contract specifically performed, because the conclusions of fact show that the city council, in effect, instructed the city attorney to compel the company (appellant) to comply with its contract; and the findings of fact show that the council and majority of citizens did not want a forfeiture.

The court erred in refusing to exercise a wise judicial discretion, and in refusing to permit defendant and the receiver to comply with its contract with the city as it offers to do, and thereby save its property and franchise from destruction, and save its mortgage and unsecured creditors from irreparable damage, and also thereby avoid great public inconvenience, and damage from fire and water famine. State ex rel. Gussett v. Morris, 11 S. W. Rep., 392; 5 Thompson, Corporations, secs. 6608, 6617, 6618; High, Extraor. Rem., secs. 648, 664.

*P. W. Brown*, City Attorney, and *Campbell & McMeans*, for defendant in error—The appointment of a receiver does not invest him with title to the company's property, franchises, etc., and the fact of the receiver being or not being a party, does not affect the defendant's rights in this suit; the defendant can defend his rights as well with the receiver out as it can with him in. Abbey v. Railway, 5 Texas Civ. App., 261; High, Receivers, sec. 302; Thomas v. Quarles, 64 Texas, 491.

The State of Texas is neither a necessary nor a proper party to this suit, which is not to forfeit the defendant's charter, but to forfeit and annul the franchise and privilege granted by the plaintiff to the defendant to use the streets, alleys and public grounds of the city.

If the judgment is erroneous in this "that it decrees that defendant (appellant) shall cease to use the streets, alleys or public grounds of the city of Palestine for carrying on its business of operating water works after the expiration of sixty days from a written demand by the city council," that is error of which the appellant cannot complain, for it is more favorable to the appellant than it was entitled to under the law and if the appellee does not complain, which it does not, certainly the appellant would not be heard to do so. Water Co. v. State, 18 So. Rep., 62. The judgment does not attempt to deprive the appellant of the use of its water mains, pipes and plant, nor of the water mains, pipes and plant themselves; but the judgment simply forfeits the franchise and rescinds the contract, and decrees that the applicant shall cease to use the streets, alleys and public grounds for the carrying on of its business.

All franchises that were granted to appellant by appellee were exclusive franchises; and, in case of a forfeiture as prescribed by the terms of the contract, to hold that only the exclusiveness of the franchise and

not the franchise itself is forfeited, is against all reason. Again, exclusive franchises cannot be granted by cities; therefore nothing was granted, and nothing can be forfeited, which would leave the appellant a naked trespasser in the public grounds of the city of Palestine, and the city certainly has the right to expel a trespasser. Brenham v. Water Co., 67 Texas, 544.

The court did not err in refusing to render judgment decreeing specific performance of the contract as requested by the appellant, for a court should not render a judgment, the enforcement of which is beyond its power and jurisdiction; and in this case the property was out of the possession of, and beyond the control of, appellant, and in the possession and under the control of a receiver, who had been appointed by, and was an officer of, the United States court, and consequently not subject to the jurisdiction of this court for the purposes of specific performance of the contract between appellant and appellee. The receiver did not make himself a party to and offer to perform the contract, as contended by appellant. And the appellant was and is wholly without any means of performing the contract.

Courts are reluctant to declare forfeitures of corporate franchises where it clearly appears that the whole matter is within the power and jurisdiction of the court, and a different decree, which is better for all parties concerned, can be rendered and enforced; but when it clearly appears, as it does in this case, that the only judgment which can be rendered and enforced is one of forfeiture, it is the duty of the court to render that judgment.

The obligation of the company was a continuing one, and its ability to furnish water according to the contract was a condition precedent to its continuing right to use the streets and to carry on its business; on a failure to comply with the contract as to quality or quantity of the water, the city had the right to invoke the aid of a court of equity to rescind the contract. Farmers' L. & T. Co. v. Galesburg, 133 U. S., 156; Arcata v. Railway, 28 Pac. Rep., 676.

It seems that the only material difference, so far as the rights of the city are concerned, between those grants of franchises to use the streets, where, by the terms of the grant, a forfeiture is specifically provided for on non-compliance with the conditions of the grant, and those that are granted upon continuing conditions precedent is that, in the former the city can revoke the grant without the aid of a court of equity, while in the latter the rescission must be by a decree of such court. Arcata v. Railway, supra; Railway v. City of Leavenworth, 1 Dill., 393; Morawetz on Corp., sec. 1006; Myrick v. Brawley, 33 Minn., 377.

It is held that although provision is made in the charter of a turnpike corporation for the punishment of the company and its agents if it should neglect to keep its road in good and perfect repair, such provision was intended to apply only to temporary neglect, and did not deprive the State of its sovereign power to annul the grant when its purposes have failed through such neglect. Turnpike Co. v. State, 19

Md., 239; and see, People v. Turnpike Road Co., 23 Wend., 222; People v. Turnpike Road Co., 23 Wend., 254; State Bank v. State, 1 Blackf., 267.

BROWN, ASSOCIATE JUSTICE.—The city of Palestine instituted suit in the District Court of Anderson County to forfeit the franchises granted by it to one Gray and his assigns, which afterwards became vested in the defendant the Palestine Water and Power Company. The case was tried before the judge, a jury being waived, and he filed very elaborate findings of fact, from which we make the following condensed statement as applicable to the question presented by the application for writ of error.

On June 7, 1881, the city of Palestine, a municipal corporation duly organized under the general laws of the State of Texas, passed an ordinance by which it granted to Carroll E. Gray and his assigns the exclusive right for fifty years "to establish, maintain and operate water works and buildings and to lay mains, pipes, etc., in and along the streets, alleys and public grounds of the city for supplying clear and wholesome water for all domestic and other purposes." Section 11 of that ordinance reads as follows: "In the event that said grantee, or his assigns, after said water works have been in successful operation, shall suffer a suspension of the supply of the water thereby causing an insufficient supply of clear, wholesome water for domestic and other purposes for a period exceeding sixty days, then and in that event the said grantee and his assigns shall forfeit all franchises hereby granted, and during any suspension all water rentals shall be suspended." This section was amended by ordinance passed June 21, 1881, so as to read as follows: "In the event that said grantee or his assigns, after said water works shall have been in successful operation, shall suffer a suspension of the supply of water thereby causing an insufficient supply of clear, wholesome water for domestic and other purposes for a period exceeding sixty days, then and in that event said grantee and his assigns shall forfeit all exclusive franchise herein granted, unless such suspension shall have been caused by the act of God or unavoidable accident, and during such suspension all water rentals shall be suspended."

On June 21, 1881, the city and Carroll E. Gray entered into a contract in writing which embodied the substance of the ordinances before referred to and copied above, which ordinances were made part of the contract.

The work was begun within the time specified and completed in accordance with the contract between the parties. The Palestine Water and Power Company was organized as a corporation under the general laws of the State of Texas and succeeded to all the obligations of Carroll E. Gray.

"The evidence clearly shows that the water furnished by the company in the summer of 1893, and since the summer of 1895 and up to three or four weeks ago, was neither clear nor wholesome, but was unfit for

domestic purposes, and that the supply of even bad water was inadequate. The sources of water supply consist of ponds fed by surface water and some springs; the ponds have never been cleaned out and are filled for at least five or six feet with decayed vegetable matter and mud and accumulations of filth which flowed in from the natural water sheds constituting the principal source of supply and covering about three hundred acres of land, on which are situated several small farms and from one hundred and fifty to three hundred residences. The company owned about one hundred and sixty-two acres, part of the water shed, and this is enclosed, the ponds being in the enclosure, and the company has put part of the land in cultivation and willfully permitted cattle and horses to pasture in the enclosure and negligently permitted dead fish and reptiles to remain in the ponds and dead animals to remain within the area of the water supply. In the summer, by reason of insufficient storage capacity, the ponds became low and the water stagnant and impure, and nearly the whole year the water is more or less muddy and offensive in odor. The evidence shows that an abundant supply of clear, wholesome water from artesian wells could be had in the city and utilized by the company, and that no effort was made by defendant before the institution of this suit to obtain water supply, and the material allegations of plaintiff's petition have been proved substantially."

The city made frequent complaints to the defendant corporation as to the failure to comply with the provisions of the contract and the ordinances of the city, and there were frequent promises of remedying them, but it was not done. The city council of the City of Palestine being divided in opinion as to whether the city should establish and operate its own water works, submitted to the qualified voters the question in these forms—"for city ownership"—"against city ownership." The vote when taken was against the proposition that the city should construct and maintain its water works.

On the 9th day of April, 1896, after the vote had been taken, the city council passed a resolution instructing the city attorney to at once take the proper legal steps through the court to compel the Palestine Water and Power Company to furnish clear, good and wholesome water in the city of Palestine and in ample sufficiency. The city attorney instituted this suit on the same day, and on the 18th day of the same month N. Oscar Gray, vice-president of the Palestine Water and Power Company, and trustee for the holders of the bonds for said company, being joined by the bondholders themselves, applied to the Hon. David E. Bryant, Judge of the United States Circuit Court for the Eastern District of Texas, for the appointment of a receiver for that corporation, and the judge appointed a receiver, and in the order of appointment directed him to proceed at once to comply with the defendant's franchises requiring it to furnish to the citizens of the city of Palestine and to said city a sufficiency of clear, good and wholesome water for domestic and manufacturing purposes and for purposes of fire protection. The order authorized the receiver to apply the income and

revenue derived from the operation of the water works as a "going concern," and "to apply said revenue in payment of expenses of operating the same." Subsequently the United States Circuit Court authorized the receiver to issue certificates to the amount of $30,000, with a lien upon the property, to raise money to pay for such repairs and improvements as might be necessary to comply with the franchises and contracts of the corporation with the city of Palestine.

The defendant company asked that the receiver be made a party defendant in the suit, which the court refused, and it also pleaded that it was ready to perform specifically its contract if the court should hold that it has incurred a forfeiture, and sets out the improvements contemplated to be made by it in the future. But there was no evidence showing any ability to perform the contract except by use of the money to be derived from the sale of the receiver's certificates. There is no other water works plant in the city, and the city depends on the defendant for its water supply and fire protection.

The trial court entered judgment forfeiting the franchise granted by the city and directing that all the pipes, mains, etc., belonging to the said defendant should be removed from the streets of the city of Palestine within sixty days after demand made by the city. The Court of Civil Appeals affirmed the judgment of the District Court.

This suit was instituted to revoke and set aside the contract between the city of Palestine and the Palestine Water and Power Company as well as to annul the ordinance which granted to the water and power company the right to occupy its streets and the State court thereby acquired jurisdiction of the subject matter, before the receiver was appointed by the United States Circuit Court. Riesner v. G., C. & S. F. Ry. Co., 89 Texas, 656. It was not necessary to make the receiver a party to the suit. If he desired to defend the action he had the right to make himself a party. City Water Co. v. The State, 88 Texas, 600; Thompson on Corporations, Vol. 5, secs. 6893-4-5-6. The corporation, the Palestine Water and Power Company, cannot complain because tne receiver was not made a party defendant, because, if he was a necessary party, the judgment will not affect any interest that he has in the subject matter of litigation and it would be of no benefit to the defendant to make the receiver a party.

The plaintiff in error claims that the city of Palestine cannot maintain this action, because: (1) The right to occupy the streets was derived from the State; (2) the city having contracted that a forfeiture should occur upon the happening of a certain event, thereby waived any ground of forfeiture not embraced in the contract, and because the city had elected to enforce the contract and cannot afterwards rescind it; (3) because the facts do not justify a rescission of the contract made made between the city and the plaintiff in error.

The case of Galveston & Western Railway Company v. City of Galveston, 90 Texas, 398, is cited by plaintiff in error to support the proposition that the right to occupy the streets of the city of Palestine is de-

rived from the State and not from the city. There is a marked differ-
ence between the law which grants to railroads the right to occupy the
streets of a city and that by which the same privilege may be secured by
this class of corporations. Besides, there is such a marked difference
between the purposes of the two corporations as to make it necessary
and proper to place a different construction upon the acts as they affect
the one or the other. The case of Galveston and Western Ry. v. Gal-
veston does not sustain the contention of the plaintiff in error upon this
point; the right of the city to maintain the action was not involved in
that case, but the decision was placed upon the ground that the city
could not prescribe the condition of forfeiture which it was attempting
to enforce in that proceeding.

By article 383, Revised Statutes, a city organized under the general
laws of the State is declared to be "capable of contracting and being
contracted with, suing and being sued, pleading and being impleaded,
answering and being answered unto, in all courts and places, and in
all matters whatever;" and article 419 of the Revised Statutes provides
that such city shall "have the exclusive control and power over the
streets, alleys and public grounds and highways of the city." From
these provisions it will be seen that our cities are given large powers
in the control of their streets and are fully authorized and empowered
to maintain suits in all instances in which their rights are involved.
We think there can be no doubt that the city of Palestine had the right
to maintain this suit and that the State of Texas was not a necessary
party to it.

The language of the contract and of the ordinance of the city is not
such as to operate as a waiver of any right of action which the city
might have independent of the terms of that contract. Neither were
the acts of the city in taking the sense of the qualified voters upon the
question presented such as to estop it from asserting any right that the
city had. Indeed, we believe that a city council has no authority to
waive the right of the public to revoke a franchise which has been
abused by the grantee. Morris & Cumings v. State, 65 Texas, 59.

The Water and Power Company was organized as a corporation to
carry out the contract between Gray and the city. Its charter must
have specified the purpose of its organization to be "to supply water
to the public in the city of Palestine, Texas," It could do no other
business nor could it do that at another place. While its charter was
issued under the general law of the State, it was as much a corporation
of that locality as was the city itself, and derived its right to occupy the
streets of that city from art. 705 of the Revised Statutes, which reads
thus: "Any gas or water corporation shall have full power to manu-
facture and sell and to furnish such quantities of water or gas as may be
required by the city, town or village where located, for public or pri-
vate buildings, or for other purposes, and such corporation shall have
the power to lay pipe, mains and conductors for conducting gas or water
through the streets, alleys, lanes and squares in the city, town or vil-

lage, with the consent of the municipal authorities thereof, and under such regulations as they may prescribe."

Considering the foregoing article with reference to the subject upon which the Legislature was acting and the purpose to be accomplished, we think the use of the language "under such regulations as they may prescribe" had the effect to commit that class of corporations to the control and government of the cities in which they are located. It was not intended to restrict the city to giving or refusing consent, but that consent might be accompanied with such regulation as the city might prescribe, within its powers of government and control over such corporations, as well as those found necessary after the water works had been constructed. The corporation was created solely to operate within the limits of the city of Palestine and for the purpose of dealing with it and its citizens alone, and it did not affect the citizens of any other portion of the State. The public policy of the State in the case of railroad companies would necessarily preserve the road as against the action of any local authority, while on the other hand the same public policy might well commit the corporation created alone for local purposes to exclusive local government, as was done in this class of cases. We conclude that the right to occupy the streets of Palestine was derived from the consent of the city, which for sufficient cause might be revoked upon application of the city.

In the view we take of the case it becomes unnecessary to determine whether under the terms of the ordinance and contract a forfeiture of all franchises granted would occur, or only a forfeiture of the exclusive character of such franchises, because, in our opinion, the judgment of the District Court is sustained by the law independent of the terms of forfeiture which were prescribed in the ordinance and the contract.

Section 52, of Booth on Street Railways, states the law in this language: "The failure to construct and operate a street railway according to the terms and conditions of the charter under which the right of way is granted may be a sufficient ground for the forfeiture of its franchise in the streets. A slight failure in those respects will not be an adequate cause for such proceedings, nor can the forfeiture be based upon a gross failure which is but temporary. In the nature of things, each case must depend upon its own particular facts. But as a general rule it may be stated that if the company grossly fails in the performance of vital duties essential to the efficiency of the service which it is bound to give, such conduct will constitute a misuser of its franchise on account of which it may be forfeited to the State. The right exists at common law, and may be asserted not only for the violation of express charter duties, but also for a wanton disregard of regulations imposed by the State or municipality in the exercise of their reserved powers." Farmers Loan & Trust Co. v. City of Galesburg, 133 U. S., 156; The City of Detroit v. The Detroit City Railway Co., 37 Mich., 558; People v. Hillsdale & Chatham Turnpike Road Co., 23 Wend., 254; State v. The

Madison Street Railway Co., 72 Wis., 612; Angell & Ames on Corporations, secs. 775 and 776; Morris & Cumings v. State, 65 Texas, 59.

The case of Farmers Loan & Trust Co. v. City of Galesburg, above cited, in its facts is very much like the case under examination. The city of Galesburg, by an ordinance which in its language is remarkably similar to that under which the plaintiff in error claims, and by a contract, granted to Nathan Shelton and to his assigns the right to use the streets of the city. The water company was formed under the laws of the State of Illinois and assumed the obligation of the grantee in the said ordinance and contract. The object of granting the franchise in that case was expressed to be "for supplying the said city and the inhabitants thereof and of the adjacent territory with water for public and private uses" and again it was provided that "the water supplied by said works shall be good clear water and the source of the supply shall not be contaminated by the sewerage of the said city." The water company failed to perform its part of the contract in furnishing either the quantity or quality of water which was required, and the city of Galesburg filed a suit to annul and cancel the ordinance by which its consent was given to the use of its streets and to rescind the contract entered into by it with Shelton. Judge Blatchford for the court said: "The principal contention on the part of the appellants is, that, on the acceptance of the ordinance by Shelton, a right in the franchise vested in him which could not be defeated even though he afterwards failed to comply with its terms; that the failure of the Water Company to furnish water in the quantity and of the quality called for by the ordinance was only a breach of condition subsequent; and that a court of equity will not lend its aid to divest an estate for such a breach. But it seems to us, that, in respect to a contract of the character of the present one, the ability of the Water Company to continue to furnish water according to the terms of the ordinance was a condition precedent to the continuing right of Shelton and his assigns to use the streets of the City and to furnish water for a period of thirty years; and that when, after a reasonable time, Shelton and his assigns had failed to comply with the condition as to the quantity and quality of the water the City had a right to treat the contract as terminated, and to invoke the aid of a court of equity to enforce its rescission. A suit for a specific performance of the contract, or a suit to recover damages for its nonperformance, would be a wholly inadequate remedy in a case like the present. The danger to the health and lives of the inhabitants of the City from impure water, and the continued exposure of the property in the City to destruction by fire from an inadequate supply of water, were public questions · peculiarly under the care of the municipality; and it was entitled and bound to act with the highest regard for the public interests, and at the same time, as it did, with due consideration for the rights of the other parties to the contract." The language of the learned judge as quoted above is so applicable to the facts of the case now under consideration that it leaves little to be said in the further discussion of the question.

The Palestine Water and Power Company adopted and acted upon the ordinance which granted the franchise enjoyed by it in the following language: "To establish, maintain and operate water works and buildings ana to lay mains, pipes, et ceteræ, in and along the streets, alleys and public grounds of the city for supplying clear and wholesome water for all domestic and other purposes." The execution of the purpose for which the corporation was organized is here expressed as the condition upon which the franchise was granted, accepted by the water company and relied upon by the city. The facts found by the trial judge show that the water company was guilty of a most flagrant disregard of its obligation to the city, and instead of furnishing clear and wholesome water as it was obliged to do, it furnished to the inhabitants of that city water which endangered the health and lives of that people if in fact it did not cause sickness and death to prevail among them. The city remonstrated with the officers of the water company from time to time against their disregard of the agreement to furnish good and wholesome water, which remonstrances were utterly ignored by the water company but repeated by the city until forbearance ceased to be a virtue and became on the part of the officers of that city little less than a reprehensible neglect of the highest interests of that people. Failing to get any redress at the hands of the water corporation, the city instituted this suit, and then, for the first time, the water company came forward and offered to perform its contract without showing the ability to do so. It is claimed in this case that the trial court should, in the exercise of a just and wise discretion, have permitted the water company to perform its contract after judgment had been entered against it, instead of forfeiting the franchise granted. We quote the language of Judge Cowen, used in the case of People v. Hillsdale & Chatham Turnpike Road Company, in which a similar contention was answered, as follows: "When a cause of forfeiture has arisen, whether from non-feasance or otherwise, no case nor dictum can be found that it shall be legally atoned for by subsequent good behavior. * * * The argument goes to prove that a corporation may practice all manner of abuse by commission or omission if it be careful to stop before the attorney-general can be informed and institute a prosecution." In this case the water company did not mend its ways, nor offer to do so, until after the suit had been brought, and we think that, under the circumstances, the trial court did not abuse its discretion—if indeed it had any discretion in the matter—by refusing to extend the time of performance.

As said in Farmers Loan & Trust Co. v. Galesburg, cited above, a suit for specific performance or for damages would not have afforded adequate protection or redress to the city. The property of the corporation was incumbered with bonds to a large amount, doubtless equal to if not greater than its value, and a judgment for damages could not have been satisfied out of the property. Besides, no money compensation could correct the evils which were suffered by the city in its deprivation

of wholesome water.   In a suit for specific performance no court could have adequately enforced the rights and given sufficient protection to the people of that city.   A decree that the company should furnish "clear and wholesome water could have been enforced only by placing an officer of the court in charge, and operating the works.   To revoke the franchise which the water company had so flagrantly abused is a harsh remedy and may cause loss to fall upon those· who hold the bonds, but it is the only adequate means by which a city can surely protect itself against such wrongs as were practiced in this case.   Bondholders of such corporations are entitled to protection to the extent that the corporations perform their duties under the law, but they take such bonds with the knowledge that continuance of the charter rights and other franchises granted to corporations depend upon their faithful performance of the duties to the public for which they were created."

We find no error in the judgments of the District Court and Court of Civil Appeals and both judgments are therefore affirmed.

*Affirmed.*