**FORT WORTH GAS CO. v. LATEX OIL & GAS CO. et al. (No. 11862.)** *

Court of Civil Appeals of Texas. Fort Worth. July 9, 1927.

Rehearing Denied Oct. 1, 1927.

**1. Franchises �køø15—Courts do not favor forfeiture of franchises.**

Forfeitures of franchise rights are not favored by the law.

**2. Deeds ⊘køø165—Unless grantor of estate in fee, or his heirs or successors, enforces forfeiture for failure to perform condition subsequent, grantee's title remains unimpaired.**

Unless grantor of an estate in fee, or his heirs or successors, asserts right to enforce forfeiture of grant because of failure of grantee to perform a condition subsequent, the grantee's title remains unimpaired.

**3. Gas ⊘køø6—Franchise rights held unimpaired, where city never enforced forfeiture for gas company's failure to pay tax required under franchise ordinance.**

In injunction proceeding by a gas company to prevent a rival company from using streets and furnishing city with gas, where city had never enforced forfeiture for rival company's failure to pay tax on gross earnings required under franchise ordinance, and had in lieu thereof assessed an ad valorem tax, company's franchise rights *held* unimpaired.

**4. Gas ⊘køø7(2)—Gas company held to have franchise in city "with consent and under direction of governing body," notwithstanding want of referendum (Rev. St. 1925, arts. 1495, 1497, 1504; Const. art. 11, § 5).**

Under gas company's charter, received from secretary of state, and Rev. St. 1925, arts. 1495, 1497, 1504, giving franchise rights to lay down and operate pipe lines in any city or town in the state, and to furnish gas "with the consent and under the direction of the governing body of the city or town," company *held* to have franchise rights, under amendment to city ordinance, secured from mayor and city council, notwithstanding franchise was not authorized by qualified voters of the city according to referendum provision in city charter; especially in view of Const. art. 11, § 5.

**5. Constitutional law ⊘køø81—Business of owning, producing, and selling oil, gas, and other mineral solutions calls for state regulation.**

Business of buying, prospecting for, owning, producing, transporting, and selling oil, gas, salt, and other mineral solutions, calls for exercise of state regulation.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Injunction proceeding by the Fort Worth Gas Company against the Latex Oil & Gas Company and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Slay, Simon & Smith, of Fort Worth, for appellant.

Cantey, Hanger & McMahon, of Fort Worth, and J. W. Hassell, W. H. Francis, A. S. Hardwicke, and Wallace Hawkins, all of Dallas, for appellees.

CONNER, C. J. This proceeding was instituted by the Fort Worth Gas Company, a corporation engaged in the business of supplying and distributing natural gas to the city of Fort Worth, against the Latex Oil & Gas Company, the Magnolia Petroleum Company, and the Magnolia Gas Company, for the purpose of enjoining the defendants, and each and every one of them, from using the streets of the city of Fort Worth for the purpose of laying pipes thereunder, through which to transport and distribute natural gas. The record discloses that neither the Magnolia Gas Company nor the Latex Gas Company has entered or is using the streets of the city of Fort Worth, or has any intention of doing so, if at all, until it receives a proper permit or franchise so authorizing from the governing authorities. Therefore these two defendants and their connection with the case will not be further referred to.

The petition for the injunction shows that the Fort Worth Gas Company is duly incorporated and acting under charters and ordinances authorizing that company to operate the business of supplying, to the city of Fort Worth and industrial and domestic consumers of said municipality, natural gas; that said gas company, by virtue of its franchise and charter, has laid its mains and pipes for the purpose of conducting natural gas under the streets and alleys of the city; that it has invested large sums of money in its plant and equipment, and in its lines and rights of way, and in laying and extending and operating its system and plant; that it has laid in the city of Fort Worth alone approximately 450 miles of pipe used in the furnishing of natural gas to domestic and industrial consumers of said city, and it now has approximately 30,000 consumers, and has acquired, as a result of such efforts and service, good will of a value impossible to estimate; that by virtue of said operation, and by virtue of its exercise of the rights granted under the franchise above referred to, it has become vested with an interest in and to the rights and privileges granted under said franchise; that plaintiff is the owner of a large amount of property in the city of Fort Worth and pays taxes thereon.

Plaintiff avers that the defendant Magnolia Petroleum Company is threatening to and preparing to begin operations in the corporate limits of the city of Fort Worth, of a kind and character similar to the business carried on by the plaintiff; that it is digging ditches and trenches in which to lay its gas pipes on, over, and under the streets and

alleys of said city, and will continue to do so unless restrained by an injunction or other order of the court; that defendant is doing said acts and making such preparations unlawfully and in violation of the charter of the city of Fort Worth and the laws of the state of Texas; that defendant does not have a valid franchise or right to operate a gas business in the city of Fort Worth, or to use the streets, highways, and alleys of the city for the purpose of constructing a gas pipe line therein. It is further alleged that the defendant is soliciting customers for the purchase of gas from its proposed gas lines and mains, and that said defendant has entered into a contract with one of the .industrial concerns of said city, heretofore supplied with gas by the plaintiff, to furnish it with natural gas, to the great injury and detriment of the plaintiff; that, were it not .for the said unlawful acts of the defendant in securing and soliciting said customers, they would purchase gas from the plaintiff; that the acts of the defendant constitute and will continue to constitute irreparable injury to the plaintiff, for which it has and will have no adequate remedy at law.

It is further alleged that all of said acts are in violation of, and an infringement upon the rights of the plaintiff, vested in it by the franchise owned and held by the plaintiff, and are unlawful attempts by the defendant to enter into wrongful and unlawful competition with the plaintiff and establish its business in the said city; without the lawful consent of the city, as provided in the charter, and contrary to law; that plaintiff has for a long time engaged in business as a public utility in the city of Fort Worth, supplying its inhabitants with natural gas, acting at all times under a valid franchise, and at all times complying with the charter and ordinances of the city and the laws of the state; that during said times, and at great cost and expense, it has established a large and profitable business, and acquired, and has in the city, valuable properties, including good will and the patronage of a large number of consumers; that, by reason of the unlawful acts of the defendant, many of the consumers of gas heretofore supplied by the plaintiff will hereafter purchase gas from the defendant, and large revenues and profits will thereby be diverted from the plaintiff to the defendant, and the plaintiff will thereby sustain great loss, and by reason of said acts of the defendant the plant and properties of the plaintiff will be greatly depreciated in value, and the plaintiff will be thereby damaged in a sum exceeding $100,000.

. It was further alleged that the aforesaid acts and conduct of the defendant are increasing, and will increase from day to day, and are damaging the business of plaintiff, and infringing upon plaintiff's rights in the premises; that there is no way of legally determining the damages that will be occasioned from day to day to the plaintiff, and that on account of the situation existing at this time, and which will continue to exist, it is imperative that the plaintiff have speedy relief, and that its rights be protected under the laws of the state and under the charter of the city of Fort Worth; and that, each and every day the defendant is permitted to continue his conduct, plaintiff's damages increase and are irreparable, for which it has no adequate remedy at law. It was further alleged that the plaintiff has appealed to the city of Fort Worth for protection in its rights under its franchise, and to prevent defendants from building their .said pipe line, and engaging in the gas business in the city, and that said city and its governing agencies have and will decline and refuse to take any action in the matter.

Upon notice, the Magnolia Petroleum Company appeared and pleaded, so far as necessary to notice, admitting the digging of the ditches and the laying of pipes under the streets of the city of Fort Worth as alleged, but averred that it had acquired a lawful right to do so under its franchise and ordinance of the city.

At the threshold of our consideration, we are met with the question of whether the plaintiff showed a right to maintain the action. Appellant bases its right to the injunction on the proposition that it has a lawful franchise to conduct a natural gas business upon the streets and within the limits of the city of Fort Worth, while the Magnolia Petroleum Company is without any such right or franchise to bring its suit within the principles announced in the case of Lindsley v. Dallas Consolidated Street Ry. Co. (Tex. Civ. App.) 200 S. W. 207, and Tugwell & Madison v. Eagle Pass Ferry Co., 74 Tex. 492, 9 S. W. 120, 13 S. W. 654.

In the case last cited, it appears that the county commissioners' court of Maverick county had granted to Tugwell & Madison the exclusive right to operate a ferry across the Rio Grande river at Eagle Pass. The Eagle Pass Ferry Company, after incorporating as a ferry company, sought a license, tendering the license fee, to also operate a ferry between the points named, but the application for such license was refused. It nevertheless continued to operate a ferry at Eagle Pass, when Tugwell & Madison applied for and were granted the issuance of a preliminary injunction, which, at a hearing, was dissolved. Upon appeal from the order of dissolution, it was held by the Supreme Court that Tugwell & Madison were entitled to the injunction. The ground of the ruling, as we understand, was not that the commissioners' court was empowered to grant an exclusive franchise to Tugwell & Madison, but on the ground that under the statutes

they were entitled to issue a license to operate a ferry and that the Eagle Pass Company had no such license, and in the absence of a license Tugwell & Madison were entitled to restrain the competition of which they complain.

The other case is one in which the street railway company sought to restrain the operation of an ordinance of the city of Dallas regulating jitneys. On a hearing before the district court, the ordinance was declared void, and the city and its officers restrained from enforcing or observing it. On appeal to the Dallas Court of Civil Appeals, the judgment was affirmed in an opinion by Mr. Justice Rasbury. It appeared that the street railway company was a corporation lawfully authorized by the municipality to use its streets as a common carrier of passengers. It was held that the grantee of the valid franchise has a property right therein which may be protected against those not having a similar right. In sustaining this proposition the court cited numerous cases and quoted the following from McQuillin, Mun. Corp. vol. 4, § 1771:

"The grantee of a valid franchise, according to what seems to be the better rule, may enjoin interference with its property rights by a competitor, which has not obtained a valid grant of the right to use the streets."

It was further determined that the ordinance of the city of Dallas of June 19, 1917, the enforcement of which was sought to be enjoined, and which had been adopted by the electorate of the city, under referendum provisions of the city charter, was void, on the ground that the governing body of the city—the mayor and city commissioners—and not the electorate was given the power under the charter and legislative acts to license and thus authorize the operation of the jitneys within the city limits.

The record in the present case shows that on the 21st day of November, 1925, the Magnolia Petroleum Company was duly incorporated and received from the secretary of state a charter, which, so far as pertinent, reads as follows:

"The purposes for which this corporation is organized are to buy, prospect for, own, produce, and sell oil, gas, salt, brine, and other mineral solutions and to store and transport the same and make reasonable charges for such storage and transportation, with powers to furnish oil and gas for light, heat, and other purposes; to lay down, construct, maintain, and operate pipe lines, tubes, tanks, pump stations, connections, fixtures, storage houses, and such machinery, apparatus, devices, and arrangements as may be necessary to operate such pipes and pipe lines; * * * and such corporation shall have the right to lay its pipes and pipe lines across and under any public road or highway or under any railroad, railroad right of way, street railroad, canal, or stream in the state of Texas, and to lay its pipes and pipe lines across or along

and under any street or alley in any incorporated city or town in the state of Texas with the consent and under the direction of the governing body of such city or town; * * * and, in general, to have and exercise all the powers and rights that are now, or may hereafter be conferred upon corporations organized for the purpose of 'storing, transporting, buying and selling of oil, gas, salt, brine, and other mineral solutions,' under the provisions of chapter 15, title 32, Revised Civil Statutes of the state of Texas 1925, and amendments thereof, or under other Texas statutes, and subject to the limitations and restrictions imposed upon such corporations under the laws of the state of Texas."

Article 1495, of chapter 15, title 32, relating to corporations and the powers given to them, declares that chapter 15 embraces corporations created for the purpose of storing, transporting, buying, and selling oil and gas, salt, brine, and other mineral solutions. The next article, 1496, of the same chapter, declares, in so far as necessary to state, that such corporations shall have power:

"1. To store and transport oil, gas, brine and other mineral solutions, and also sand, clay and clay products, and to make reasonable charges therefor.

"2. To buy, sell and furnish oil and gas for light, heat and other purposes; to lay down, construct, maintain and operate pipe lines, tubes, tanks, pump stations, connections, fixtures, storage houses and such machinery, apparatus, devices and arrangements as may be necessary to operate such pipes and pipe lines between different points in this state. * * * "

Article 1497 of the chapter reads in part:

"Such corporation shall have the right to lay its pipes and pipe lines across and under any public road or highway, or under any railroad, railroad right of way, street railroad, canal or stream in this state, and to lay its pipes and pipe lines across or along and under any street or alley in any incorporated city or town in this state with the consent and under the direction of the governing body of such city or town."

Article 1504 of the chapter reads:

"No provision of the six preceding articles shall be construed as limiting, modifying or repealing any part of the law regulating oil pipe lines, or as authorizing any ownership or transaction, the effect of which would be to substantially lessen competition or to violate any law of this state prohibiting trusts and monopolies and conspiracies in restraint of trade or to violate any provision of the anti-trust laws of this state."

Previous to the incorporation above stated, the Magnolia Petroleum Company was a joint-stock association, and by Ordinance 417 of the city of Fort Worth given the right, license and franchise to install, equip, maintain, repair, and operate a line of pipes for the purpose of conveying crude petroleum or crude petroleum products on, upon, over, and under certain streets and highways within the corporate limits of the city of Fort Worth, and to convey through the same crude petro-

leum or the products of crude petroleum, to be supplied and sold therefrom to the inhabitants and various business or industrial or manufacturing institutions in the city of Fort Worth.

Among conditions in the ordinance not thought to be relevant was one to the effect that the Magnolia Petroleum Company should—

"pay to the city of Fort Worth for the first ten years of the operation of said lines therein, an annual tax of not less than 4 per cent. of the gross earnings derived from transporting or distributing crude petroleum and crude petroleum products through said lines within the city of Fort Worth, and a failure so to do shall work a forfeiture of the franchise granted by the terms of this ordinance."

This association was incorporated as above shown, and on the 12th day of January, 1926, secured from the mayor and city council of Fort Worth an amendment of Ordinance No. 417, which, after reciting the grant of the franchise to the Magnolia Petroleum Association and its later incorporation, as above stated and the succession of the corporation to the rights and privileges granted to the previous association, reads, so far as thought necessary to quote, as follows:

"That all of the rights, licenses and franchises heretofore granted to the Magnolia Petroleum Company, a joint-stock association, to install, equip, maintain, repair and operate fuel distribution lines through said named streets of the the city of Fort Worth, as heretofore granted in and limited by the terms of Ordinances No. 417, 433, 440, 461, 527 and 537 of the city of Fort Worth, be and the same are hereby recognized to be in and extended to the Magnolia Petroleum Company, Incorporated, a private corporation of Texas, as the successor to said joint-stock association; and the said Magnolia Petroleum Company, Incorporated, may hereafter exercise any and all of the rights, licenses and franchises described in the aforenamed ordinances, subject, however, to the terms and conditions as contained therein and for the length of time therein provided."

The amended ordinance further provided that it was made—

"subject to all of the terms and conditions as heretofore set out in the ordinance enumerated in the preceding section and without waiving any of the clauses therein contained, or any rights of the city of Fort Worth, and without waiving any violations, if any, of the provisions of such previous franchises and ordinances or the right of the city of Fort Worth to declare and exercise a forfeiture thereof, in accordance with the provisions therein, or to assert any of the rights hereinbefore named and without assuming any responsibility for such transfer of assets or in any way warranting the validity of such represented transfer."

Another section of the ordinance provides that it was made "cumulative of all of the provisions and terms" of the previous ordinances and not intended to "repeal the same,

but only to amend the same in recognition of the succession of the Magnolia Petroleum Company, Incorporated, to the Magnolia Petroleum Company, a joint-stock association." The ordinance was signed by the mayor of the city and also by the city secretary.

[1-3] The appellant seeks to void the franchise granted defendant Magnolia Petroleum Company by its state charter and the permission to do business granted by the governing authorities of the city of Fort Worth by the amending Ordinance 1118 on two grounds: (1) That the 3 per cent. gross earning tax made a condition in the franchise or license to the Magnolia Petroleum Association was not paid as provided for in the ordinance; and (2) that the license or franchise granted by the Magnolia Petroleum Company, Incorporated, under Ordinance 1118, was not authorized by a referendum vote of the taxpaying citizens, as required by a provision of the city charter. The undisputed facts show that the 3 per cent. gross earning tax for the years 1915 and 1916 was demanded by the city of Forth Worth and paid, but that from that date no further tax was paid; that in lieu thereof said franchise was valued at $10,000, and an ad valorem tax was assessed against said franchise on said valuation, which said ad valorem tax was from 1916 duly paid to the city of Forth Worth; also that each and all of the taxes of whatsoever nature and description assessed against the Magnolia Petroleum Company were paid to the city of Fort Worth from said date and up to and including the date of the trial. It further appears that the city has taken no action whatever to declare a forfeiture of the franchise granted to the Magnolia Petroleum Company as an association or as an incorporation, and, as alleged in plaintiff's petition, has refused to join in this suit to prohibit the appellee corporation from an exercise of its claimed rights under its incorporated powers and under its claimed franchise.

The distribution of natural gas to the citizens of Fort Worth manifestly contributes largely to their convenience and comfort. Forfeitures are not favored by the law, and the governing body of the city has evidently not only failed, but declined, to declare a forfeiture of any right conferred by ordinances upon either the association or corporation, and we decline to do so. The provision of paying 3 per cent. gross earning tax is clearly a condition subsequent, and it seems to be settled by the law that no one can take advantage of the nonperformance of a condition subsequent annexed to an estate in fee, but the grantor or his heirs, or the successors of the grantor, if the grant proceeds from an artificial person, and, if they do not see fit to assert their right to enforce a forfeiture on that ground, the title remains unimpaired in the grantee. Henderson v. Beaton, 1 Posey, Unrep. Cas. 17; Railway Co. v. Dunman,

74 Tex. 267, 11 S. W. 1094; Stevens v. Railway Co. (Tex. Civ. App.) 169 S. W. 644; Freeman v. Walker & Sons (Tex. Com. App.) 212 S. W. 639; Thompson on Real Property, sec. 2078; extensive note, Ann. Cas. 1916B, 179; Hook v. Bowden, 144 Mo. App. 331, 128 S. W. 261; Thompson on Corporations (3d Ed.) §§ 2949 and 2946; G., H. & S. A. Ry. Co. v. State, 81 Tex. 572, 17 S. W. 67; Mackall v. Canal Co., 94 U. S. 309, 24 L. Ed. 161; City of St. Louis v. Laclede Gaslight Co., 155 Mo. 1, 55 S. W. 1003. From the latter case we quote the following headnote:

"Defendant contracted to do certain street lighting for plaintiff city. The contract contained provisions, which the city claimed required defendant to pay to it semiannually 5 per cent. of its gross receipts, which defendant contended was not true. For five years the parties failed to comply with, or to take steps to enforce, such provisions. Held, that such failure must be regarded as an interpretation by them that defendant was not required to make such payment; hence the city is estopped to maintain an action for its collection."

[4] The only further question necessary for our determination is whether the appellee Magnolia Petroleum Company, Incorporated, has secured the lawful right under its charter and under the ordinances of the city of Fort Worth to construct its lines and do the things of which the appellant company complain. If it has such right, then the cases of Lindsley v. Dallas Consolidated Street Ry. Co. (Tex. Civ. App.) 200 S. W. 207, and Tugwell v. Eagle Pass Ferry Co., 74 Tex. 492, 9 S. W. 120, 13 S. W. 654, are without application, for in those cases it appears that the parties enjoined from competitive action were without right or license.

We have concluded that, under the charter issued to the Magnolia Petroleum Company by the state of Texas, on November 23, 1925, and under the articles of the statutes we have quoted, said incorporated company, among other powers, was granted the right to engage in the natural gas business, to lay pipe lines under the streets and alleys in the city of Forth Worth, and to transport natural gas and serve the same to the inhabitants of the city, conditioned that its pipes be laid in the city "with the consent and under the direction of the governing body of such city," and, such consent having been acquired at the time and in the manner hereinbefore shown, the grant was complete and effective, regardless of the fact, so ably and strongly stressed by counsel for appellant, that the consent was not authorized by the qualified voters of the city in accordance with a referendum provision of the city charter.

[5] Corporations organized as was the Magnolia Petroleum Company concern the public at large, the business being one which calls for an exercise of state regulation. The following was said in the case of City of La Harpe v. Elm Tp. Gas, Light, etc., Co., 69 Kan. 97, 76 P. 448, by the Supreme Court of Kansas:

"The production and distribution of natural gas for light, fuel, and power is a business of a public nature, the control of which belongs to the state. In the control of streets, alleys, and other highways the power of the Legislature is supreme and unlimited, except so far as it may be restricted by constitutional provisions. It is incompetent for the Legislature to provide for the laying of pipes and mains in streets, alleys, and public grounds in order to distribute natural gas and transport it to consumers, and for this purpose there may be an appropriation of private property under the sovereign power of eminent domain. * * * Corporations organized for the production and distribution of natural gas may avail themselves of the privilege given by section 1366, General Statutes of 1901, of laying gas pipes through any street, alley, or public ground of any city of the second or third class, without obtaining the consent of the municipal authorities thereof."

In the case of Denison & Sherman Ry. Co. v. St. L. S. W. Ry. Co., 96 Tex. 233, 72 S. W. 201, our Supreme Court said:

"Our laws provide that railway companies may build across and upon the streets of a city, but only on condition of obtaining the assent of the city thereto. Rev. Stat. arts. 4426, 4438. When the consent of the city has been secured, the right of the company to build over and upon the streets named in the concession is complete. No further action is necessary as a prerequisite to a lawful appropriation. When the assent of the city has been given and acted upon, it cannot be recalled. When the city consents, in due form, to the use of any particular street or streets by a railway company for right of way purposes and the company accepts the privilege, the right becomes vested, fixed, and certain, and can only be revoked in an action to forfeit brought by authority of the state. Railway Co. v. Brownsville, 45 Tex. 96; Street Railway Co. v. Street Railway Co., 68 Tex. 169 [4 S. W. 534]; Railway Co. v. Galveston, 90 Tex. 398 [39 S. W. 96, 36 L. R. A. 33]; Arcata v. Railway Co. [92 Cal. 639] 28 P. 676."

In Galveston & Western Ry. Co. v. City of Galveston, 90 Tex. 398, 39 S. W. 96, 36 L. R. A. 83, the rule is thus stated:

"It is not denied that the state might have granted to railroad companies the right to occupy the streets and highways without any condition; therefore the superior authority over this subject rests with the state Legislature The Legislature did, in clear and unambiguous terms, grant to railroad companies the right to occupy the streets of towns or cities, upon a condition that the consent of such city or town should be first obtained. When the city of Galveston gave its consent for the railroad company to construct its road over the streets of the city, the condition precedent prescribed by the Legislature was fulfilled, and the statutory right attached in favor of the railroad company."

In the case of City of Texarkana v. Telephone Co., 48 Tex. Civ. App. 16, 106 S. W.

915, this court, speaking through Associate Justice Speer, had this to say:

"The public highways of the state, including even the streets and alleys within incorporated towns and cities, belong to the state, and the supreme power to regulate and control them is lodged with the people through their representatives—the Legislature. Whatever power of control is lodged in the city council is delegated by the Legislature. When we consider the nature of the business of telegraph and telephone lines in this busy commercial age, we have a most cogent reason for the Legislature declining to commit to the arbitrary control of the municipalities throughout the state the use by such companies of the public streets and alleys. These companies are not primarily of local concern, affecting only the inhabitants of the towns and cities through which they pass, but they essentially concern the public at large, in that they furnish quick and cheap means of communication between all points throughout the country, by which a very large percentage of the business of the country is transacted. In other words, the business is such a one as calls for the exercise of state regulation rather than the delegated power of municipal control."

The charter of the Magnolia Petroleum Company and article 1497, hereinbefore quoted, in terms clearly confers the right upon the appellee company to lay its pipe lines along and under any street or alley of the city under the direction of the governing body. The city of Forth Worth is incorporated under article 11 of the Constitution, providing for home rule, as has been expressly determined by our Court of Civil Appeals in the case of Fort Worth v. Lillard, 272 S. W. 577, and section 5 of that article of the Constitution reads:

"No charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state."

We have been furnished with a copy of an opinion by our Supreme Court, not yet [officially] published, in the case of McCutcheon v. Wozencraft, Mayor, 294 S. W. 1105, in which the "governing body of the city" is defined to be the city council or board of commissioners. That was a case in which McCutcheon and others applied to the board of commissioners of the city of Dallas for the grant of a franchise to use the streets of the city for the purpose of operating a system of busses for transporting passengers and freight for hire in the city and between the city and other cities and villages in the surrounding territory. The board of commissioners refused to grant the franchise, and also refused to submit the question of whether one should be granted to a vote of the qualified voters of the city of Dallas, as provided for in the subdivision of the city's charter. McCutcheon and others thereupon brought suit, praying for a mandamus to require the commissioners to submit said franchise ordinance to a vote of the citizens under a referendum provision of the city charter. The provision contained the usual and requisite allegations, and showed a compliance with the provisions of the city charter. The district court denied the mandamus, and its judgment was affirmed by the Amarillo Court of Civil Appeals. A writ of error was granted by the Supreme Court and the case was transferred to Section B of our Commission of Appeals, but later withdrawn from the Commission and determined by the Supreme Court. The Supreme Court thus states the question before them:

"The real question which controls this case is whether a franchise to use and occupy the public streets, avenues, alleys and grounds of a city may be granted by a vote of the qualified voters of a city under a referendum provision of a city charter; i. e., whether the general statutes of the state have not placed this power and authority exclusively within the jurisdiction and control of the governing body of a city and only after such a franchise ordinance has been passed by the governing authority that it may be submitted to a vote of the citizens for their approval or rejection."

Upon reasoning and upon authorities and statutes quoted, the Supreme Court held that the power and authority to grant a franchise to use and occupy the streets and public grounds of a city "is with the governing body, i. e., the city council or board of commissioners," and concluded that the mandamus was properly refused.

The case last cited seems conclusive upon the vital question presented in the case before us, and upon the authority of that case, and the reasoning and citations previously given, we conclude that the judgment below, denying the injunction, must be affirmed.