# H. T. FLEMING v. HOUSTON LIGHTING & POWER COMPANY.

No. 7621.  Decided April 3, 1940.
Rehearing overruled October 30, 1940.
Second motion for rehearing overruled December 4, 1940.
(138 S. W., 2d Series, 520.)
(143 S. W., 2d Series, 923.)

*Fulbright, Crooker & Freeman* and *A. J. Lamonte,* all of Houston, for plaintiff in error.

Even though the plaintiff is operating within the city under a franchise, the city is not denied the right to charge for the use and occupancy of its streets, although the franchise does not so provide, as the city has exclusive control and power over its streets, with the right to regulate same and fix a rental charge for the use of same. City of Houston v. Southwestern Bell Tel. Co., 259 U. S. 318; City of St. Louis v. Western Union Tel. Co. 148 U. S. 92, 37 L. Ed. 380; Lewis v. Nashville Gas & Heating Co., 162 Tenn. 268, 40 S. W. (2d) 409.

*W. P. Hemblen, F. G. Coats,* and *Baker, Botts, Andrews & Wharton,* for defendant in error.

The Legislature has not authorized the city to impose a charge or to condition the right of plaintiff to occupy the streets of its city. Galveston & W. Ry. Co. v. City of Galveston, 90 Texas 398, 39 S. W. 96; Denison & Sherman Ry. Co. v. St. Louis S. W. Ry. Co., 96 Texas 233, 72 S. W. 161; Erwin v Blanks, 60 Texas 583.

*Sewall Myer, Vernon Coe* and *Will Sears,* all of Houston, *Cantey, Hanger & McMahon, McKnight & Johnson, R. K. Hanger,* all of Ft. Worth, filed briefs as amici curiae.

MR. JUDGE HICKMAN, of the Commission of Appeals, delivered the opinion for the Court.

Plaintiffs in error are the City of West University Place and its officers. They will be referred to collectively as the City. Defendant in error Houston Lighting and Power Company is a Texas corporation engaged in the business of generating, transmitting and distributing electric current for use by the public. It will be called the Company. The City was in-

corporated in 1925 by general law. From 1925 to 1930 the Company furnished electric service to the City and its inhabitans without having the formal consent of the City. In 1930 the City adopted a franchise ordinance, which was accepted by the Company, and which is set out in full as an exhibit to the opinion of the Court of Civil Appeals. See Exhibit "B," 128 S. W. (2d) 494. The franchise granted by the ordinance is still in force and effect, the same having been granted for a period of fifty years. In January, 1938, the City adopted Ordinance No. 129, which is set out in full as Exhibit "A" to the opinion of the Court of Civil Appeals. See 128 S. W. (2d) 493. Shortly after the adoption of that ordinance the present suit was instituted by the Company in the form of an action to enjoin the enforcement thereof on the ground that same was void. The trial court upheld the validity of the ordinance and denied the relief prayed for. The Court of Civil Appeals reversed the judgment of the trial court, declared the ordinance invalid, and enjoined its enforcement. 128 S. W. (2d) 487.

The ordinance required all telegraph, telephone, electric and gas companies using the streets or other public places within the corporate limits of the City to pay, for the privilege of such occupancy, a rental equal to 4 per cent. of the gross receipts from business conducted in the City. A penalty of $100.00 per day was provided for the violation of the ordinance by the carrying on of any business covered thereby without the payment of such rentals, and the right was reserved by the City to refund unearned rentals at any time, and thereupon to cancel the privileges therein granted. It was the conclusion of the Court of Civil Appeals that the ordinance was inconsistent with Article 1436, R. S. 1925. The portion of that article material here reads as follows: "Such corporation (meaning electric corporation) * * shall have the right to erect its lines over and across * * * any street or alley of any incorporated city or town in this State with the consent and under the direction of of the governing body of such city or town * * *."

As we understand its opinion, that court arrived at the conclusion that the ordinance was invalid by this procees of reasoning: The right of way or easement enjoyed by the company was a grant from the State under Article 1436; same was a property right acquired by the Company by such grant from the State, and the City, which neither granted the right of way nor possessed proprietary interest in it, could not impose a charge in the nature of a rental for the use thereof. The leading case announcing the principal which was applied by the Court of Civil Appeals is Galveston & Western Ry. Co. v.

City of Galveston, 90 Texas 398, 39 S. W. 96, 36 L. R. A. 33. It appears from the opinion in that case that the City of Galveston, by ordinance, undertook to grant to the railway company the right to construct and maintain tracts on certain streets of the City. The ordinance also provided that such privilege should be forfeited, if the company should fail to extend its tracks across Galveston Bay within five years. That ordinance was assented to and accepted by the company. It failed to extend its tracts across the bay within the time provided, and suit was brought by the City to forfeit its right under the ordinance on the ground of such failure. At that time there were in effect Article 4426 and 4438, R. S. 1895. The former granted the railroad companies the right to construct their lines across, along or upon any street, and the latter provided that such companies were not authorized to do so without the assent of the city or town. The Court, speaking through Justice Brown, held that, since the superior authority over the streets of cities rested with the Legislature, it could have granted the company the right to occupy same without imposing any condition upon the grant; that it had seen fit to impose upon such grant the condition precedent that the consent of the city be first obtained; and that when that condition was satisfied the right became vested and could not be divested by the City for breach of a condition subsequent.

Later the same Justice wrote in the case of Palestine Water & Power Co. v. City of Palestine, 91 Texas 540, 44 S. W. 814, 40 L. R. A. 203. In that case the City granted a franchise to the company to operate a water works in the City, with the right to lay mains and pipes in and along public streets and alleys and other public grounds of the City. It was provided, however, that, if the company should fail for a designated period of time to furnish a sufficient supply of wholesome water, its rights should be forfeited. The Company failed to furnish sufficient water, and the City brought suit to cancel the franchise. The Company contended that under Article 705, R. S. 1895, then in effect, its right to occupy and use the streets of the city was derived from the State by direct grant from the Legislature, and could not, therefore, be annulled by the City. It relied upon the Galveston case, supra. Article 705 R. S. 1895, provided that "* * * such corporation shall have the power to lay pipes, mains and conductors for conducting gas or water through the streets, alleys, lanes and squares in the city, town or village, with the consent of the municipal authorities thereof, and under such regulations as they may prescribe."

It was held that such a marked difference existed between the purposes of a railroad company and those of a company organized to distribute water locally as to make it proper and necessary to place different constructions upon the two articles of the statutes. We quote from that opinion as follows: "The public policy of the State in the case of railroad companies would necessarily preserve the road as against the action of any local authority, while on the other hand the same public policy might well commit the corporation created alone for local purposes to exclusive local government, as was done in this class of cases. We conclude that the right to occupy the streets of Palestine was derived from the consent of the city, which for sufficient cause might be revoked upon application of the City."

Another case, the opinion in which was written by Justice Brown is the case of City of Brownwood et al v. Brown Telegraph & Telephone Co., 106 Texas 114, 157 S. W. 1163. In that case the City denied to a telegraph and telephone company the right to pass through the city with a long distance telephone line and to erect such poles on the streets as were necessary for that purpose. The applicable statutes were Article 1231 and 1235, R. S. 1911. The former granted to telegraph companies the right to construct and maintain their lines and set their poles and other fixtures along, upon and across any street, and the latter granted cities broad powers to regulate and control the manner in which such companies might make use of the streets.

Telephone companies were not named in the articles, but it was held that they came under them the same as telegraph companies. After so holding the Court construed the articles as granting to such companies the absolute right to pass through cities and over and upon the streets thereof, and, accordingly held that the city had no authority to deny it. The opinion expressly limited its application to long distance lines, and expressly did not pass on the rights of a company operating a local telephone system within a city or town. Considering together the Galveston case, the Palestine case and the Brownwood case, it appears that the construction of the various statutes involved was made to turn upon the fact of whether the business of the utility was interurban or intraurban.

Such was the status of the decisions when the Court of Civil Appeals at Dallas came to consider the case of Southwestern Tel. & Tel Co. v. City of Dallas, 174 S. W. 636. That case upheld an ordinance of the City of Dallas similar to the one here involved; the principal difference between the two ordinances

being that the Dallas ordinance fixed the amount of the rental charge at $2.00 per pole while the one under review fixed it at 4 per cent. of the gross receipts. The Court took notice of the decision in the Brownwood case, which expressly left open the question before it for decision. The City's charter granted to the City substantially the same authority over its streets and other public places as that granted to the City in this case under Article 1016, R. S. 1925. The effect of the opinion in that case, when considered in the light of the foregoing cases, was to determine that a telephone company, in conducting a local system in a given city or town, must procure its authority to use the streets and other public places of the City from the City and be subject to regulation and control by such City; that statutes granting rights of way over streets and other public places of the City must be limited in their application to the business of furnishing long distance service. Writ of error was applied for in that case by the telephone company and was by this Court refused.

■ We have inspected the application and find that the argument was forcefully and ably pressed upon this Court that the case should be ruled by the decision in the Galveston case. By overruling that application this Court approved the holding that cities have the right to fix charges in the nature of rentals for the use of their streets and other public places by telephone companies conducting a local business.

For equal, if not greater, reason the ruling should be held to apply to electric companies of the nature of the company in the instant case. It is more certainly engaged in intracity business, like the water company in the Palestine case than is a telephone company. It is our conclusion that the authorities above considered clearly sustain the right of cities to fix a rental charge for the use of its streets and other public places by electric corporations which carry on a local business.

We shall not undertake to harmonize the foregoing with one of the holdings made in the case of Fort Worth Gas Co. v. Latex Oil & Gas Co., 299 S. W. 705 (writ refused). We experience no difficulty in arriving at the conclusion that that case was correctly decided, in the sense that a correct conclusion was announced therein, but we question whether that portion of the opinion which discusses the power of the city can be harmonized with the principal established by the above cases. It now appears that the writ should have been dismissed rather than refused in that case. By refusing a writ in that case, the Court

certainly did not intend to overrule both the Palestine case and the Dallas case.

■■ We have also concluded that the ordinance is not invalid merely because it provides for measuring the amount of the rental charge by a per centage (four per cent) of the gross receipts of the business transacted by the Company in the City. In the case of Municipal Gas Co. v. City of Wichita Falls, 88 S. W. (2d) 608, an ordinance was upheld which measured the charge by 5 per cent. of the gross receipts. The case was remanded on the issue of the reasonableness of the rental charge. We have inspected the record in this Court and find that it was the City and not the gas company which made application for writ of error. By that application the City urged that, having the authority to assess such charge, the question of its reasonableness vel non was not for the courts. By dismissing that application this Court held that it was a proper question for decision by the courts. It is thus established that the material inquiry is not the method used to measure the rental charge, but rather the reasonableness of such charge. It cannot be held, as a matter of law, that the charge in this case is so unreasonable as to render the ordinance invalid.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court April 3, 1940.

#### ON REHEARING.

The argument is pressed on motion for rehearing and by amici curiae that the ordinance in question is in conflict with, and forbidden by Article 7060, R. C. S. 1925, as amended by sec. 3, part 4 of ch. 495 of the Acts of the 44th Legislature, 3rd Called Session. That article increased the taxes on gross receipts required to be paid by gas, electric and water utilities and further amended Article 7060, by adding thereto the following:

"No city or other political subdivision of this State, by virtue of its taxing power, police power or otherwise shall impose an occupation tax or charge of any sort for the privilege of doing business upon any person, corporation or association required to pay an occupation tax under this Article, provided that nothing in this Article shall be construed to prohibit the collection of any tax now imposed by a franchise, and provided further that this Article shall not affect any contracts now in existence or hereafter made between a city and the holder of a franchise."

Since we did not discuss that article in our original opinion, and since so much reliance is being placed thereon, we have concluded to make this statement with reference thereto: The ordinance did not impose a charge for the privilege of doing business. Evidence was offered upon the hearing that it would be possible for the Company to carry on its business within the City without the necessity of using its streets, alleys or other public ways.

We sustained the ordinance upon the ground that same imposed a charge in the nature of a rental. If that holding is correct, then the amendment above copied does not apply at all. The authorities recognize a distinction between a rental charge and a tax or charge for the privilege of doing business. It is clearly pointed out in the leading case of City of St. Louis v. Western Union Telegraph Co. 148 U. S. 92, 37 L. Ed. 380. The reply of plaintiffs in error to the argument of amici curiae presents other reasons for the contention that the amendment has no application, one of which is the claim that same was unconstitutional, because not covered by the caption. We expressly do not pass on any of those contentions.

The motion for rehearing is overruled.

Opinion adopted by the Supreme Court October 30, 1940.

Second motion for rehearing overruled December 4, 1940.