JOSEPH WEST AND OTHERS v. THE CITY OF ASBURY PARK AND OTHERS.

Submitted July 6, 1916—Decided November 21, 1916.

Chapter 136 of the session laws of 1916 (*Pamph. L., p.* 283), regulating the operation of auto buses, or jitneys, in cities of this state, which requires as a prerequisite to municipal consent to such operation the filing of a bond by the owners of such vehicles against bodily injury or death as a result of an accident occasioned by the operation of such vehicles in the public streets, and the imposition of a tax on gross receipts of five per cent., does not violate the fourteenth amendment to the federal constitution requiring equal protection of the laws.

On *certiorari.*

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutors, *Charles F. Dittmar.*

For the defendants, *Durand, Ivins & Carton.*

The opinion of the court was delivered by

SWAYZE, J.   The power of the legislature to authorize municipal corporations to regulate the use of the streets by vehicles, even to the extent of excluding vehicular traffic, is established. *Barnes* v. *Essex County Park Commission,* 86 *N. J. L.* 141. The power to regulate the use by automobiles and motor vehicles is also settled. *Unwen* v. *State,* 73 *Id.* 529; *affirmed,* 75 *Id.* 500; *Cleary* v. *Johnston,* 79 *Id.* 49; *Kane* v. *State,* 81 *Id.* 594; *Hendrick* v. *Maryland,* 235 *U. S.* 610.

The only questions open in the case are—*first,* whether the city has been authorized by the legislature to regulate the use by auto buses, commonly called jitneys, in the manner prescribed by the ordinance now in question; *second,* whether the attempted regulation is so discriminatory as to deprive the owners of the equal protection of the laws.

The power of the city is to be found in its charter (*Pamph. L.* 1897, *p.* 16; *Comp. Stat., p.* 1297) and in the act of 1916 (*Pamph. L., p.* 283). The charter authorizes the council to regulate, clean and keep in repair the streets and highways (section 18, par. 7), to regulate the speed and running of motor, electric or other cars through the city (par. 11), and to license and regulate all carriages and vehicles used for the transportation of passengers and goods and chattels of any kind, and the owners and drivers of vehicles and means of transportation, and to impose license fees for revenue (par. 26), and to make and establish such other ordinances as they may deem necessary to carry into effect the powers and duties conferred on them and as they may deem proper for the good government, order, protection of persons and property, preservation of the public health and prosperity of the city. *Comp. Stat., p.* 1305, *pl.* 2458.

The act of 1916 requires the owner of an auto bus to obtain the consent of the board having control of public streets for the operation of the auto bus and the use of the streets; it enacts that no such consent shall become effective and no such operation shall be permitted until the owner has filed with the chief fiscal officer of the city an insurance policy of a company duly licensed to transact business, in the sum of $5,000, insuring against loss from liability imposed by law upon the owner of the auto bus for bodily injury or death, as the result of accident occurring by reason of the ownership, maintenance or use of the auto bus on the streets. The statute also requires that the owner shall execute a power of attorney to the fiscal officer of the city to acknowledge service of process. Section 3 requires the payment to the city of five per cent. of the gross receipts as a monthly franchise tax for revenue for the use of the city.

The ordinance provides that the board of commissioners of the city may determine the reasonable seating capacity of an auto bus, the routes, hours of service and terminal points, and makes it unlawful to omit to operate an auto bus over the designated route during the hours prescribed in the consent of the city; to omit to display a sign to indicate that

the consent has been granted; to operate an auto bus without displaying a sign showing the terminal and route, and the amount of fare when it exceeds five cents; to operate an auto bus with passengers riding outside the body of the bus, or with a greater number of passengers than the auto bus is entitled to carry; to drive rapidly past an auto bus, trolley car, or vehicle to obtain a passenger; to race with any other vehicle; to refuse to carry passengers unless the auto bus is loaded to its capacity; to permit an auto bus to stand in a street outside of the stand provided, for a longer time than is necessary to take on or discharge passengers; to receive or discharge passengers except at the curb, or the regularly provided stand, and except at the nearest side of street intersections and on the right hand side of the street; to place a sign on the windshield or where it might obscure the view of the driver. It is also made unlawful for the driver to collect fares or to take on or discharge passengers while the auto bus is in motion.

We think all the provisions we have recited are well within the express powers given to the council or within the powers necessarily inferred from the general clause. That like powers may be implied from the general control of streets has long been settled. We need refer only to the leading case of *Commonwealth* v. *Stodder*, 2 *Cush.* 562.

The stress of the argument was upon other points. It is urged that the requirement of a bond from the owners of auto buses when it is not required from the owners of other vehicles, and the imposition of a tax of five per cent. on the gross receipts, when no such tax is imposed upon others, is such an unjust discrimination as to deprive the owners of auto buses of the equal protection of the laws. The ordinance in these respects simply follows the act of 1916, and if that act is within the power of the legislature, this objection to the ordinance falls. As we have no provision in our state constitution securing in express terms the equal protection of the laws, the question thus raised is a question arising solely under the fourteenth amendment to the federal constitution. The rule in questions of this kind is now so well settled by

decisions of the United States Supreme Court, that no extended discussion is required. That rule is that if the law deals alike with all of a certain class it is not obnoxious to the charge of a denial of equal protection; but the classification must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. Two citations suffice to illustrate the line of cleavage between permissible and unpermissible classification. *Gulf, Colorado and Sante Fe Railway Co. v. Ellis,* 165 *U. S.* 150; *W. W. Cargill Co. v. Minnesota,* 180 *Id.* 452. We must apply this rule to the facts of the pending case. The statute applies only to auto buses, which are defined as any automobile or motor bus, commonly called jitney, engaged in the business of carrying passengers for hire, which is held out, announced or advertised to operate or run, or which is operated or run over any streets or public places in any city, and indiscriminately accepts and discharges such persons as may offer themselves for transportation either at the termini, or points along the way or route on which it is used or operated or may be running. Stated shortly, the act applies to motor buses plying the business of transporting passengers indiscriminately, accepting and discharging them at any point. We think the legislature had the right to legislate as to such a business by itself in respect to the requirement of a bond, and a tax on gross receipts. The business differs from that of the ordinary hired cabs in that the latter do not stop between termini, charge, or are supposed to charge, each passenger with the cost of his transportation, and hence may avoid crowded streets, are under no temptation to race for passengers, and do not require a special and expensive roadway, while auto buses defined as they are in the act, charge a price that can only pay the necessary running expenses when many passengers are carried and must in order to succeed, run where the streets are crowded, and are naturally under a temptation to secure as many passengers as possible, even by dangerous racing with one another, and by reason of size and power require a specially constructed

and expensive roadway. Auto buses as defined in the act differ on the other hand from street railways, in that the latter are confined to a certain portion of the street where their rails are and cannot by varying their course endanger life or limb in any other portion of the street, and run moreover on a way fitted specially for their purpose at their own expense, while auto buses may use any portion of a way provided at public expense. These differences are necessary and inherent. Other differences exist in fact to the common knowledge of all. Street railways require a considerable, often a very large capital, and an investment in fixed plant, which affords at least some security for the payment of damages for bodily injury or death incident to their operation. The owner of an auto bus need own nothing else and in case of injury to others by reason of his negligence, may readily remove all his property from the jurisdiction of the court. The danger of accident arising from the use of all swift-moving vehicles in crowded streets, the possible lack of financial responsibility in the owner of an auto bus, and the ease of escaping from the jurisdiction, form a reasonable basis for the requirement of a bond and a power of attorney to acknowledge service of process. The fact that the owner of an auto bus is conducting a business in the public streets by picking up passengers at any point, and not merely using the streets for passage from terminus to terminus, and the use of a specially constructed way provided at public expense, form a reasonable basis for the imposition of a special tax. This is as far as the court can go. If there is a rational distinction, as we think there is, the legislature is not restrained by the constitutional limitation. The right to impose special occupation taxes is well settled, and the discretion reposed in the legislature is great. We need cite only two cases, selected because they are analogous to the present. In *Savannah, Thunderbolt and Isle of Hope Railway* v. *Savannah,* 198 *U. S.* 392, the court sustained a special tax upon a street railway, although none was imposed upon a steam railroad, making an extra charge for local deliveries of freight brought over its road from outside the city. In *Metropolitan Street*

*Railway Co.* v. *New York,* 199 *Id.* 1, it was held that a tax on surface street railroad franchises does not deprive the owners thereof of the equal protection of the laws because subsurface street railroad franchises are not subjected to a similar tax.

As we have said, the question raised in this case is to be determined by the legal rules established by the federal courts. It is gratifying to find that in the application of those rules to the peculiar circumstances of the case, our views coincide with those of other courts where similar or identical legislation and ordinances have been brought in question. As far as the decisions of other courts have been brought to our attention by the defendants' brief or discovered by us, they are unanimous. It would serve no useful purpose to cite them.

The writ is dismissed, with costs.