**EASTERN OHIO TRANSPORT CORP v BRIDGEPORT (village) et**

Ohio Appeals, 7th Dist, Belmont Co

Decided Dec 15, 1932

Belt, Cooper & Witten, Bellaire, for plaintiff.

Lynch & Matz, Bellaire, and W. V. Campbell, Bridgeport, for defendants.

## OPINION

By POLLOCK, J.

The right of a municipality to exercise all powers of local self-government and to adopt and enforce within its limits such local police, sanitary, and other similar regulations as are not in conflict with the general law is provided by §3, **Article XVIII of the Constitution,** since the adoption of the Constitution, municipalities receive and derive their power and authority for the exercise of local self-government from this provision.

"1. Since the Constitution of 1912 became operative, all municipalities derive all their 'powers of local self-government' from the Constitution direct, by virtue of §3, **Article XVIII**, thereof.

"2. The power to establish, open, improve, maintain, and repair public streets within the municipality, and fully control the use of them, is included within the term 'powers of local self-government'." **Village of Perrysburg v Ridgway, 108 Oh St 245,** 140 NE 595.

Further authority is conferred upon a municipality by §3714 **GC:** "Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance."

**Sec 3632, GC,** also provides that municipalities shall have power to regulate "the use of carts, drays, wagons, hackney coaches, omnibuses, automobiles, and every description of carriages kept for hire or livery stable purposes; to license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon. * * *."

The general principle controlling municipalities and the rights of the public is announced by the Supreme Court in **Froelich v City of Cleveland, 99 Oh St 376,** 124 NE 212, third paragraph of the syllabus: "The state and municipalities may make all reasonable, necessary, and appropriate provisions to promote the health, morals, peace, and welfare of the community. But neither the state nor a municipality may make any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation."

When the municipality has acted, it is presumed to be within the authority granted it by the Constitution and provisions of the Code: "Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community. **Allion v City of Toledo, 99 Oh St 416,** 124 NE 237, 6 A. L.R. 426.

Having these rules in mind, which govern a municipality in passing ordinances regulating traffic on the streets of a municipality, and also the rights of the courts to interfere upon the petition of citizens, we now turn to a consideration of the traffic conditions on Lincoln Avenue.

Starting at the intersection of Bridge Street and going south, Lincoln Avenue must take care of the traffic that comes into the city on Lincoln Avenue, and also that on Pike Street, which is quite a heavy traffic. South on Lincoln Avenue from Pike Street until you come to at least the railroad crossing over Lincoln Avenue, the street is very narrow, business properties on both sides of the street and the traction company's line in the center of the street. You then cross the Baltimore & Ohio Railroad tracks, composed of two main tracks and switch track, and then the street widens somewhat, but is used as a business street until it enters or intersects with Howard Street. What is known as Kirkwood of Bridgeport is the largest residential section of the village. In reaching the business part of the village, and in going north or east, the residents of that section must pass over Lincoln Avenue. Lincoln Avenue is also a part of Federal Route No. 7, which is a much-traveled route. The traction company, in operating its cars along Lincoln Avenue to the intersection, and there turning on to Howard Street, stops to receive and discharge passengers at about the same place the plaintiff's motor vehicles stop for that purpose, except that its cars stop in the center of the street. Street cars and motorbusses must stop again in a short time before crossing the railroad tracks; and private vehicles should stop, or at least slow down, in order to avoid danger.

From these conditions, we are unable, under the above rules or principles, to say that the ordinance is unreasonable and arbitrary regarding the rights of plaintiff upon the public streets and highways.

It is further urged by the plaintiff that to enforce this ordinance in preventing the transport corporation from stopping near the intersections of Howard Street is confiscatory of its property.

It appears from the evidence that something like 400 passengers per month either enter the motorbusses of plaintiff on the

east side of Lincoln Avenue, or leave the bus on the west side near Howard Street. It is urged that the plaintiff will be deprived of this revenue, should the ordinance be sustained.

The certificate received by the plaintiff from the Public Utilities Commission, under which it is exercising, does not designate stops for automobiles for the purposes of taking on and discharging passengers within the corporate limits of the village of Bridgeport. The only right plaintiff has to stop for the purpose of taking on passengers or discharging them is in interstate traffic. The enforcement of this ordinance does not limit the conditions of the state license or certificate of the plaintiff company. The certificate of convenience and necessity granted by the state commission to a corporation for the purposes of transporting by motor vehicle passengers for hire does not convey to such motor company any property right in the streets or public highways over which it is permitted to operate its bus.

"The recipient of a certificate of convenience and necessity to operate a motor transportation line over portions of the public highways does not thereby acquire any property right in such highways, and the acquisition of such certificate does not add to his capital assets." **Pennsylvania R. Co. v Public Utilities Commission, 116 Oh St 80, 155 NE 694.**

The same principle was announced in the opinion in the case of **Sylvania Busses, Inc. v City of Toledo, 118 Oh St 187, 160 NE 674.**
The principle is also referred to by the Supreme Court in the second proposition of the syllabus, in the case of **Rowe, Jr., v City of Cincinnati, 117 Oh St 382, 159 NE 365:** "A lessee from an owner of real property abutting upon a public street acquires no right by virtue of his lease of such abutting property which entitles such lessee permanently to appropriate any part of such public street to use for private business purposes."

The enforcement of this ordinance may cause the plaintiff company to lose some of the passenger trade which it would otherwise receive if its right to stop was not limited, but the ordinance in preventing it from stopping except at designated stops does not take away or destroy any of its property rights. It still has the right to operate its motor vehicles, carrying passengers over the streets of Bridgeport in interstate business, just as before.

It is further urged that to enforce this ordinance against the plaintiff company is discriminatory when put in comparison with other persons and companies using the streets.

It is a well-known principle that municipalities or other bodies controlling the public highways of the state, or the streets of a municipality, cannot discriminate against individuals or persons in like business.

The case of Town of Clinton v Standard Oil Co., 193 N. C. 432, 137 SE 183, 55 A.L.R. 252, is in point, wherein it was held that municipal ordinances must be uniform, fair, and impartial in their operation; reasonable and not arbitrary; without discrimination against those of the same class. Other cases have been called to our attention of like import.

It cannot be doubted that such ordinances must not discriminate against those of the same class. But when we are considering this subject, it may be well to remember that there is a distinction between ordinances which prevent engaging in certain business on private property and those which prevent engaging in and operating a business upon the streets of the municipality.

The streets of a municipality are intended primarily for the citizens and others operating on said streets in the ordinary way, not for those using them for their private business purposes. In the use of the streets for private business purposes, there is a well-known rule that the municipality has a right to classify persons so using the streets:

"1. A legislative act is presumed in law to be within the constitutional power of the body making it, whether that body be a municipal or a state legislative body. * * *

"3. Legislation, in order to be definite and certain must either expressly or by clear implication classify the persons, things, conditions, and the like upon which the law shall operate.

"4. Classification is an inherent right and power in legislation, limited only by the Constitution and the judicial constructions thereunder.

"5. A classification must not be arbitrary, artificial, or evasive, but there must be a real and substantial distinction in the nature of the class or classes upon which the law operates.

"6. In respect to such distinctions, the legislative body has a wide discretion, and the legislation involving classification will

not therefore be held invalid unless the classification attempted is clearly and obviously unreasonable to the point of discriminating against members of the same class, so as to deny them the equal protection of the laws. * * *

"9. A legislative body may direct its legislation against any evil as it actually exists, without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are not forbidden. **Yee Bow v City of Cleveland et, 99 Oh St 269, 124 NE 132 (12 A.L.R. 1424),** approved and followed," **City of Xenia v Schmidt, 101 Oh St 437, 130 NE 24.**

The question then arises whether the use of the streets, as complained of by the plaintiff as being discriminatory against it, is in the same class; or whether plaintiff is in a different classification.

The plaintiff calls attention to the fact that the ordinance does not prevent the abutting property owners who are in business along the sides of this street from having trucks stop for the purpose of unloading their goods from the trucks into the stores, and for loading, and that this is permitted in the narrow and congested part of the street.

The right of abutting property owners to use the streets and public highways for the purposes of ingress and egress to their properties is a well-known right, long and well established in this state. It is necessary to grant that use to abutting property owners in order that they may occupy and use their properties profitably, and such a use cannot be said to be in the same class as the use of the streets made by a motor vehicle which is using the streets to carry passengers for hire and stopping to receive and discharge passengers upon the streets.

There is also a like claim made that automobiles are permitted to park along the sides of Lincoln Avenue at and near the place where plaintiff is asking that it be permitted to receive and discharge passengers.

The right to use the streets of a municipality at designated places for the purpose of parking automobiles or other motor vehicles is a necessary incident to the use of such vehicles on the streets. It is not doing business on the street, but is leaving the automobile on the street for a reasonable length of time in order to transact business in the municipality.

"The business of leasing automobiles to be driven by the lessee upon the public streets of a municipality is a use by the lessor of the public streets for gain and not a use by such lessor as a member of the public in the ordinary way." **Hodge Drive-It-Yourself Co. v City of Cincinnati, 123 Oh St 284, 175 NE 196, 77 A.L.R., 889.**

The plaintiff has called our attention to, and it relies very much upon, the case of Schappi Bus Line, Inc. v City of Hammond (C.C.A.) 11 F. (2d) 940, in which case the court in the opinion, as one of the reasons why the ordinance was unreasonable and arbitrary, called attention to the fact that plaintiff was prevented from operating its motor vehicles and from receiving and discharging passengers on the streets, upon which automobiles were permitted to park for at least an hour. It is true that the court refers to this fact, and gives it as one of the reasons that the ordinance was unfair and discriminatory; but the real question in that case was that the ordinance prevented the motor vehicle of plaintiff from entering the city, requiring it to stop several miles from the business center, and at the same time permitted other companies using motor vehicles to operate over these streets. We do not think that the case referred to above is authority for holding that the ordinance under consideration is discriminating against the plaintiff company by preventing it from stopping and taking on passengers and discharging them when automobiles are permitted to be parked along the sides of the street, at least under the rules announced by the Supreme Court of this state.

We think that the municipality had a right to classify motor vehicles using the streets for the purposes of carrying passengers for hire without including therein either truck stops in front of business places upon the street for the purposes of discharging and receiving goods in such places or the parking of automobiles for a reasonable length of time.

We then come to the further claim that the ordinance is discriminatory in permitting the Wheeling Traction Company to operate its traction cars over Lincoln Avenue and Howard Street without limiting its right to stop thereon, and especially in permitting the cars to stop at or near the place north of Howard Street, while plaintiff is prevented from stopping and receiving and discharging passengers at practically the same place.

The Wheeling Traction Company is operating an electric street railway and interurban line in the same territory, or practically over the same routes, that the plaintiff company is operating its motorbusses. The traction company has a right to take on and receive passengers at all points over its line, both interstate and intrastate. This traction company has its street railway built in about the center of Lincoln Avenue from Bridge to Howard Street, and on Howard Street to the Pennsylvania crossing, and beyond. It is a permanent track which the traction company is required to keep in repair, and it is also required to repair the streets, at least between the rails, and its cars cannot travel except on the rails of the track. It has for many, many years operated this electric line as now operated.

The question then occurs: Has the municipality a right to classify by placing motor vehicles in a class separate and apart from the traction line, and thus prevent plaintiff from stopping to receive and discharge passengers, without including the Traction Company.

"1. Streets and highways belong to the public, and are primarily for the use of the public in the ordinary way. Their use for the purpose of gain by common carriers is special and extraordinary and subject to regulation by duly constituted authority.
* * *

"3. The reasonableness of such regulations as applied to motor vehicles, must be judged with a proper regard to the safety and convenience of the public, in view of local conditions, on the one hand, and the necessities of those engaged in interstate transportation, upon the other.

"4. Where, upon the consideration of an application of a motor transportation company to operate on a designated route carrying property in interstate commerce, it is shown that a portion of such route is so badly congested by established motor vehicle operations that the addition of the applicant's proposed service would create and maintain an excessive and undue hazard to the safety and security of the traveling public and the property upon such highway, and the commission so finds, a condition so imposed upon the applicant and subsequently applying motor companies operating in intrastate and interstate traffic that such operations be routed over a less congested highway, is not an infringement upon or impairment of any right secured

by either state or Federal Constitution." **Motor Transport & Truck Co. v Public Utilities Commission**, 125 Oh St, 374, 181 NE 665.

"The power to classify the users of public streets for gain, such as busses, taxicabs, jitneys, and the like, for the purpose of regulation, has been so uniformly upheld that it has ceased to be a question." **Hodge Drive-It-Yourself Co. v City of Cincinnati**, 123 Oh St 284, 292, 175 NE 196, 198, 77 A.L.R. 889.

A like question, concerning the right to classify between motorbusses operated for carrying passengers for hire and traction companies doing the same work, has been before the courts in other jurisdictions. Waid v City of Fort Worth (Tex. Civ. App.) 258 SW 1114; Huston v City of Des Moines, 176 Iowa, 455, 156 NW 883; Star Transportation Co. v Mason City, 195 Iowa, 930, 192 NW 873; Desser v City of Wichita, 96 Kan. 820, 153 P. 1194, L.R.A. 1916D, 246; Decker v City of Wichita, 109 Kan. 796, 202 P. 89; Greene v City of San Antonio (Tex. Civ. App.) 178 SW 6; People's Transit Co. v Henshaw (C.C.A) 20 F. (2d) 87; Nolan v Riechman (D. C.) 225 F. 812.

We think the city of Bridgeport had a right to classify motor vehicles for carrying passengers for hire over the streets of the city without including the traction company within the classification.

It is further urged that the ordinance interferes with interstate traffic.

Municipalities have the right to regulate interstate traffic. The only distinction between their right to limit and regulate interstate traffic, as distinguished from intrastate, is that the regulations must not discriminate against interstate. In this case there is no discrimination.

It follows that judgment must be entered in favor of the municipality, and the petition of plaintiff be dismissed.

Judgment for plaintiff in error.

ROBERTS and FARR, JJ, concur in the judgment.