EASTERN OHIO TRANSPORT CORPORATION *v.* CITY OF
WHEELING *et al.* ·

(No. 7645)

Submitted May 15, 1934. Decided June 15, 1934.

*P. J. McGinley, Frank A. O'Brien, James Paull, Jr.,*
and *Jay T. McCamic,* for appellants.

*Handlan, Garden & Matthews, Bernard G. Witten* and
*Clifford L. Belt,* for appellee.

*R. E. O'Connor* and *Wright Hugus, amici curiae.*

LITZ, JUDGE:

The object of this suit is to restrain the enforcement of a traffic ordinance.

The common council of Wheeling, acting under its authority to regulate vehicular traffic upon its streets and alleys, on March 15, 1932, enacted and adopted a traffic ordinance limiting the number of motor bus stops within a defined congested area (of .093 square mile), prohibiting the carrying of passengers by motor busses in excess of seating capacity, and imposing a mileage tax on each motor vehicle operated by public carriers over regular routes or between fixed termini. Upon the bill, attacking these provisions of the ordinance as being unreasonable, discriminatory and in restraint of trade, the circuit court awarded a preliminary injunction, inhibiting their enforcement by the city or its chief of police. After a full hearing, the interlocutory order seemingly was perpetuated in its entirety; the trial chancellor being of opinion that the limitation on bus stops was an unreasonable regulation of traffic and that the city was without authority to levy a mileage tax on motor vehicles.

Plaintiff is an Ohio corporation engaged in operating motor busses on a fifteen-minute schedule between Bellaire, Ohio, (its principal place of business), and Wheeling, West Virginia. The route in Wheeling, as defined in the certificate of convenience and necessity issued to plaintiff by the State Road Commission, enters the congested district from the Ohio side over a steel bridge across the Ohio River, and, after making a circuit of an area of .054 square mile, re-crosses the steel bridge into Ohio. The two bus stops permitted by the ordinance along the route are, by direct line of travel, about 1700 feet apart. Passengers from Ohio to points of destination within the circumscribed area and passengers from points within this area to Ohio, in leaving or boarding plaintiff's busses at the nearer stop, will probably not be required to travel in any case more than 1,150 feet, and, of course, in most instances, a much shorter distance.

In support of its contention that the limitation of stops

is unreasonable, discriminatory and violative of the Commerce Clause of the Federal Constitution, plaintiff relies upon *Bush & Sons Co.* v. *Maloy*, 267 U. S. 317, 45 S. Ct. 326, 69 L. Ed. 627; *Buck* v. *Kuykendall*, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623; *Michigan Public Utilities Commission* v. *Duke*, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445; *Schappi Bus Line* v. *City of Hammond*, 11 F. (2d) 940; *Cannon Ball Transportation Co.* v. *American Stages*, 53 F. (2d) 1051; *Phillips* v. *Moulton*, 54 F. (2d) 119. The first two cases merely hold that a state cannot deny to interstate carriers by bus the right to operate over the public highways. The third case decided that, "A state law imposing upon all persons engaged in transportation for hire by motor vehicle over the public highways of the State the burdens and duties of common carriers, and requiring them to furnish indemnity bonds to secure payment of claims and liabilities resulting from injury to property carried, when applied to a private carrier without special franchise or power of eminent domain and engaged exclusively in hauling from a place within the State to a place in another State the goods of particular factories under standing contracts with their owners, violates the Commerce Clause, by taking from the carrier use of instruments by means of which he carries on interstate commerce, and by imposing on him unreasonable conditions precedent to his right to continue to carry on interstate commerce." The *Schappi Bus Line* case involved an ordinance of the city of Hammond, Ind., excluding busses of public carriers, not operating under a contract with the city, from certain of its streets, and prohibiting them from stopping "within several miles" of the business center of the city for the purpose of loading and unloading passengers. One of several competing carriers was operating under the exception. The Federal Circuit Court of Appeals for the Seventh Circuit, in holding the ordinance invalid because of its discriminatory feature, stated: "Even police regulations must be fair and reasonable for all citizens alike, so far as may be, and without discrimination. The ordinance in question does

not respond to these requirements. By its terms, it permits some concerns to do the identical things from the doing of which appellee (the city) claims it has the right, under the ordinance, to exclude appellant (plaintiff). Though not so written in the ordinance, the fair intendment of the whole record is that the ordinance was written, not only for the purpose of permitting that condition of things, but for the purpose of enforcing it." In *Cannonball Transportation Company* case, plaintiff and defendant were engaged in interstate bus transportation over the same routes under certificates issued to them by the Public Utilities Commission of Ohio, the certificate of plaintiff antedating that of defendant. Plaintiff sought to enjoin defendant from operating its busses over the routes, upon the theory that the prior franchise was exclusive. The Federal District Court for the Southern District of Ohio, in refusing relief, stated: "State laws, regulatory in nature, which by the terms thereof deny to common carriers for hire engaged in interstate business the use of the highways, in effect amount to a prohibition of competition, violate the Commerce Clause of the Constitution of the United States, and such legislative enactments, which in their practical application permit infringing upon or burdening interstate commerce, are unconstitutional." The bill in the *Phillips* case attacked the constitutionality of an order of the Public Utilities Commission of Rhode Island, requiring interstate bus lines operating in the city of Providence to submit to the commission for its approval such amendments to their routes and terminals as would eliminate certain streets and terminals then being used by them in the prosecution of their business. In overruling the charge, the United States District Court of Rhode Island, observed: "We are here dealing with a regulation of interstate commerce in respect to which Congress has not acted. The assertion of authority by the state is prompted by local traffic conditions and in the interests of public convenience. While neither the state nor municipal authorities could, in furtherance of such a purpose, bar the entrance and exit from the city of complainants' vehicles,

nor could they impose conditions as to routes and termini so exacting as to destroy the complainants' business, they may in furtherance of such an end impose regulations which are reasonable."

We do not believe that the ordinance, under consideration, in limiting the bus stops within the congested district of the city as applied to the busses operated by plaintiff, constitutes a direct burden upon or interference with interstate commerce. In *Farnum* v. *Public Utilities Commission,* (R. I.) 158 Atl. 713, the petitioner, Farnum, operated motor vehicles as a common carrier between Newport, R. I., and Boston, Mass. Under an order of the Public Utilities Commission of Rhode Island all terminals in Newport for interstate bus routes were confined to a prescribed area, and all interstate busses, except those operated by Short Line, Inc., were excluded from a congested district. The commission refused him a certificate to operate busses through any part of the area. He appealed on the ground that the action of the commission discriminated unfairly against him in favor of Short Line, Inc. In sustaining the order of the commission, the court said: "The terminus offered to petitioner is a little farther from Thames street than the new terminus of the Short Line, Inc. To some extent this may be a disadvantage to him; but if such is the result, it is due to the fact that the Short Line, Inc., has been permitted to erect its terminal building in an area which, because of increased traffic, has now become unsuited for interstate terminals, and not because of unfair discrimination between the two carriers. It is to be noted that petitioner does not ask to be permitted to establish his terminal in a similar location. He claims the legal right to run his jitneys even farther into the business section than the Short Line, Inc., is permitted to go. In the absence of national legislation covering the subject, a state, in the exercise of its police power, may regulate interstate vehicular travel upon its highways. Such regulation must, so far as is practical, be uniform and non-discriminatory." *People's Rapid Transit Co.* v. *Atlantic City,* 144 A. 630, involved a traffic ordinance of Atlantic City, requiring commercial

busses, having more than seven seats for passengers, to park and take on or discharge passengers, only at designated terminals, and regulating and prohibiting their use of certain streets. Taxicabs, hotel and school busses, and other busses operating solely within the city, were excepted from the restrictions. The ordinance was attacked by several interstate bus companies as being unreasonable, unjustly discriminatory against them in favor of intra-city carriers, and unduly burdening interstate commerce. The Supreme Court of New Jersey, sustaining the ordinance, said: "It is settled in this state that the regulation of motor vehicles on particular streets, even to their complete exclusion therefrom, when deemed necessary in the public interest, is within the police power delegated to municipalities. *West* v. *Asbury Park,* 89 N. J. Law, 402, 99 A. 190. And, while such regulation may be considered drastic in its operation, the court is not at liberty to substitute its judgment for that of the municipality as to the best methods of relieving traffic congestion in the specified area, in the interest of the welfare of the inhabitants and frequenters of the city."

The village of Bridgeport, Ohio, located just across the Ohio River from Wheeling, is also served by plaintiff's busses operating between Bellaire and Wheeling. On April 5, 1932, the common council enacted a traffic regulation similar to the Wheeling ordinance, defining the congested district of the village and limiting the number of bus stops therein. The bill of Eastern Ohio Transport Corporation, seeking to restrain the enforcement of the regulation, was sustained by the court of common pleas of Belmont County, Ohio. Upon an appeal, the Court of Appeals, in reversing the action of the trial court and dismissing the bill, stated: "The certificate received by the plaintiff from the public utilities commission, under which it is exercising, does not designate stops for automobiles for the purposes of taking on and discharging passengers within the corporate limits of the village of Bridgeport. *The only right plaintiff has to stop for the purpose of taking on passengers or discharging*

*them is in interstate traffic.* The enforcement of this ordinance does not limit the conditions of the state license or certificate of the plaintiff company. The certificate of convenience and necessity granted by the state commission to a corporation for the purposes of transporting by motor vehicles passengers for hire does not convey to such motor company any property right in the streets or public highways over which it is permitted to operate its bus. * * * The enforcement of this ordinance may cause the plaintiff company to lose some of the passenger trade which it would otherwise receive if its right to stop was not limited, but the ordinance in preventing it from stopping except at designated stops does not take away or destroy any of its property rights. It still has the right to operate its motor vehicles, carrying passengers over the streets of Bridgeport in interstate business, just as before." *Eastern Ohio Transport Corporation* v. *Village of Bridgeport,* 185 N. E. 891.

We are of opinion that the mileage tax for the upkeep of the streets is also valid as a traffic regulation, if the city has authority from the state to impose the charge. Both plaintiff and defendant rely upon *Sprout* v. *City of South Bend,* (Ind.) 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833. In that case, an ordinance of the city imposed an annual license tax on motor busses operating for hire therein, the fee for each bus being governed by its seating capacity. Sprout operated a motor bus between the city and points in Michigan under a license from the state. Upon his refusal to apply to the city for a permit, he was prosecuted for violating the ordinance, and fined $50.00, the amount the city would have exacted from him for a bus license. The United States Supreme Court, in reversing the holding of the state supreme court which affirmed the judgment, stated: "It is true that, in the absence of federal legislation covering the subject, the state may impose, even upon vehicles using the highways exclusively in interstate commerce, non-discriminatory regulations for the purpose of insuring the public safety and convenience; that licensing or registration of busses is a measure appropriate to that end; and that a license

fee no larger in amount than is reasonably required to defray the expense of administering the regulations may be demanded. * * * These powers may also be exercised by a city if authorized to do so by appropriate legislation. * * * Such regulations rest for their validity upon the same basis as do state inspection laws, * * * and municipal ordinances imposing on telegraph companies, though engaged in interstate commerce, a tax to defray the expense incident to the inspection of poles and wires. * * * But it does not appear that the license fee here in question was imposed as an incident of such a scheme of municipal regulations; nor that the proceeds were applied to defraying the expenses of such regulation; nor that the amount collected under the ordinance was no more than was reasonably required for such a purpose. It follows that the exaction of the license fee cannot be sustained as a police measure. * * * A flat tax, substantial in amount and the same for busses plying the streets continuously in local service and for busses making, as do many interstate busses, only a single trip daily, could hardly have been designed as a measure of the cost or value of the use of the highways. And there is no suggestion, either in the language of the ordinance or in the construction put upon it by the supreme court of Indiana, that the proceeds of the license fees are, in any part, to be applied to the construction or maintenance of the city streets." The Ohio Motor Transportation Act of 1923 requires a motor transportation company desiring to operate within the state to obtain from the Public Utilities Commission a certificate of convenience and necessity. It further provides that the applicant must pay, at the time of the issuance of the certificate and annually thereafter, a tax graduated according to the number and capacity of the vehicles used. The constitutionality of the act was attacked by two motor truck lines, operating in interstate commerce. In *Clark* v: *Poor*, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199, the Supreme Court sustained its validity, and, speaking through Mr. Justice Brandeis, stated: "The highways are public property. Users of them, although engaged exclusively in interstate com-

merce, are subject to regulation by the state to ensure safety and convenience and the conservation of the highways. *Morris* v. *Duby, ante,* p. 135; *Hess* v. *Pawloski, ante,* p. 352. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. *Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use. Hendrick* v. *Maryland,* 235 U. S. 610; *Kane* v. *New Jersey,* 242 U. S. 160. Compare *Packard* v. *Banton,* 264 U. S. 140, 144."

Although municipalities are authorized under Code 1931, 8-4-10 and 17-9-5, to regulate the use of their streets for vehicular traffic, the city of Wheeling is not expressly authorized either by its charter or by general statute to levy a mileage tax on motor vehicles operating over its streets and alleys, except as hereinafter stated. Section 21, article 6, chapter 17 of the Code (1931) provides that "no license tax shall be levied or charged by any municipality or any other political subdivision of the state with respect to motor vehicles and their operation * * *." Section 9, chapter 60 Acts (First Extraordinary Session), 1933, authorizes the State Road Commissioner to collect for the use of public roads and streets and alleys within municipalities, by each motor vehicle operated under a certificate of convenience and necessity for the transportation of passengers, one-thirtieth of a cent for each passenger seat multiplied by the total number of miles traveled, and for the use of public highways and streets and alleys within municipalities, by each motor truck operated under a certificate of convenience and necessity for the transportation of property, one-eighth of a cent for each capacity ton mile multiplied by the total number of miles traveled. Section 17 of the act requires a registration fee, on all motor vehicles operated under a certificate of convenience and necessity for the transportation of persons, of eighty dollars for a motor vehicle of twenty-one passengers or less capacity and $121.00 for motor vehicles of more than twenty-one-passenger capacity; provided that registration fees for vehicles used only for reserve or emergency equipment shall be $5.00 for each of

twenty-one passengers or less capacity and $7.50 for each of more than twenty-one-passenger capacity. Section 7 provides: "If the proposed operation be wholly within an incorporated city of more than eight thousand population, or design to serve any such city, and its adjacent suburban area, not exceeding three miles distant from the city boundary, then in such case the fees or passenger seat tax provided in section nine and seventeen of this article, as to such operation wholly within such city, shall accrue to and be paid to such city or town instead of the commissioner; and any such city or town may by public ordinance fix, charge and collect a fee or tax for the operation within the city or town in lieu of, but not greater than, the fee charged in sections nine and seventeen hereof." In view of the foregoing, we are of opinion that the city of Wheeling is restricted to the authority conferred by section 7 of the Act in requiring mileage tax on motor vehicles operating over its streets and alleys and that the provision of the ordinance requiring mileage tax on all motor vehicles operating over regular routes or between fixed termini is invalid.

It is uncertain in the decree and memorandum of opinion whether the permanent injunction is confined to the provisions of the ordinance exacting a mileage tax and limiting the number of bus stops, or extends to the provision restricting the number of bus passengers to the seating capacity of the vehicles. The memorandum and the introductory part of the decree indicate that the remedy is intended to be restricted to the two first provisions, while the adjudication would seem to include all three provisions. If it was intended by the order to enjoin the enforcement of the provision of the ordinance limiting the number of passengers to the seating capacity of busses, we are of opinion to also reverse the decree in this respect.

Counsel for plaintiff contend that the provision of the ordinance limiting the seating capacity of busses is invalid because it conflicts with the road law, which, as they insist, permits motor vehicles to carry passengers without limit regardless of seating capacity. We find no

such authorization by statute, and the recent act considered under the mileage tax provision impliedly limits the number of bus passengers to the capacity of the vehicles. The traffic regulations issued by the road department under Code, 1931, 17-8-28, do not, in our opinion, justify the contention.

The decree in so far as it enjoins the city from enforcing the mileage tax is affirmed, and, in all other respects, reversed.

*Affirmed in part; reversed in part; remanded.*