J. W. PAYNE V. OTIS MASSEY ET AL.

No. A-773. Decided July 10, 1946.
Rehearing overruled October 23, 1946.
(196 S. W., 2d Series, 493.)

238

*Charles Murphy* (now deceased), *A. F. Sundermeyer, Gam-*

*mage & Gammage* and *Earl Gammage,* all of Houston, for petitioner.

It was error for the court to hold that the appellant Payne could not question the validity of an ordinance of the city of Houston regulating the use of a public street. A. B. C. Storage and Moving Co. v. City of Houston, 269 S. W. 882; Kelly v. Wright, 144 Texas 114, 188 S. W. (2d) 983; Gulf Ins. Co. v. James, 143 Texas 424, 185 S. W. (2d) 966; Royall v. Virginia, 116 U. S. 572, 29 L. Ed. 735; 6 Sup. Ct. Rep. 510.

*Lewis W. Cutrer,* City Attorney, and *George W. Eddy,* Assistant City Attorney, both of Houston, for respondent.

Because petitioner in this action has no vested property right in the streets of the City of Houston, he has no right to maintain this action to restrain the enforcement of the ordinance requiring the payment of the street rental charge. Bains v. Parker, 143 Texas 57, 182 S. W. (2d) 397; Hunt v. Dixie Motor Coach Corp., 187 S. W. (2d) 250; Ryan v. Holcombe, 170 S. W. (2d) 838.

MR. JUDGE FOLLEY delivered the opinion of the Court.

This suit was filed by the petitioner, J. W. Payne, against the City of Houston and others to restrain the enforcement of a city ordinance regulating the operation of taxicabs within the city limits of Houston and for a declaratory judgment fixing the rights, status and other legal relations between the petitioner and the city.

Houston is a home rule city, duly incorporated and operating as such under the constitution and statutes of this state.

The petitioner alleged that for many years he had been engaged in the taxicab business in Houston and had tendered to the city the sum of $35.00 for a permit upon each taxicab operated by him for the year 1945, which was the required fee prior to the passage of the ordinance in controversy, but that the city had refused to accept the same and demanded of him an annual fee of $60.00 for each taxicab, which charge was described in the ordinance as a street renal charge for the use of the public streets. At the time the suit was filed the trial court issued a temporary restraining order against the city as prayed for by the petitioner.

By special exceptions the city urged that it appeared from Payne's petition that he was not a licensee qualified to operate taxicabs in the City of Houston and therefore could not be heard to complain of the ordinance since he possessed no property right in the use of the streets in the conduct of his private business. The trial court sustained these exceptions and denied permanent injunctive relief, however, pending the appeal the original restraining order was continued in effect until the final determination of the cause. The Court of Civil Appeals affirmed the judgment of the trial court. 190 S. W. (2d) 419.

The ordinance sought to be enjoined seeks to regulate the operation of taxicabs in the City of Houston. It requires certain records to be kept and reports to be filed with the city council, and prohibits any change in rates without the written consent of the city council. It also requires the payment of an annual street rental charge of $60.00 for each taxicab operated upon the streets of Houston, and makes it unlawful for anyone to "drive or operate a taxicab upon or over the streets of Houston unless such street rental charge has been paid thereon and a permit, certificate, or license issued thereon." It further provides that the unearned portion of any and all *license fees* on all taxicabs paid before the passage of the ordinance shall be deducted from the street rental charge due under the new ordinance. A fine of $200.00 is provided for each violation of any part of the ordinance, and in addition thereto the taxicab operator's license certificate or permit may be suspended, revoked or cancelled by the Director of Utilities of the City of Houston.

There is nothing in the pleadings to indicate a situation comparable to that in Fleming v. Houston Lighting & Power Co., 135 Texas 463, 138 S. W. (2d) 520, idem, 135 Tex. 463, 143 S. W. (2d) 923, where this court held that a municipality might lawfully impose a gross receipts tax against a public utility company as a charge for the use of the streets. In that case there was a permanent occupation and appropriation of certain portions of the streets to the exclusion of the general public, which is not true here.

■ Municipalities are creatures of our law and are created as political subdivisions of the state as a convenient agency for the exercise of such powers as are conferred upon them by the state. They represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them. All acts done by them must find authority in the law of their creation. City of Brenham v.

Brenham Water Co., 67 Texas 542, 4 S. W. 143; Southwestern Telegraph & Telephone Co. v. City of Dallas, 104 Texas 114, 134 S. W. 321; Southwestern Telegraph & Telephone Co. v. City of Dallas, 174 S. W. 636, writ refused, error dismissed 248 U. S. 590, 39 Sup. Ct. 7, 63 L. Ed. 435; Walker v. City of Richmond, 173 Ky. 26, 189 S. W. 1122, Ann. Cas. 1918 E, 1084.

■ It is well settled as a general rule that municipalities have the power to regulate the use of their streets, and may enact valid rules and regulations for the government of motor vehicles within their borders so long as they are not in conflict with or repugnant to legislative enactments governing the use of such vehicles; but that such ordinances are invalid if they are in conflict with statutes relating to the subject. 21 A. L. R. 1186.

■ There is no doubt that under Sections 12, 20, and 21 of Art. 1175, V. A. C. S., the City of Houston is authorized to regulate, license, and fix charges or fares to be made by any person owning, operating or controlling any vehicle of any character used for the carrying of passengers for hire, or the transportation of freight for hire on the public streets of the city. But in view of the provisions of Art. 6698, V. A. C. S., the power of the municipality to license motor vehicles does not include the authority to charge a fee for that license.

■■ A license is merely a permit or privilege to do what otherwise would be unlawful. The object of a license is to confer a right or power which does not exist without it. A license fee is the sum extracted for the privilege of carrying on a particular occupation or business, and it may be imposed either for regulation under the police power or for revenue, or for both regulation and revenue. 37 C. J. 168, sections 3, 4 and 5; 33 Am. Jur. 325, section 2.

■ Article 6698 is a part of Section 2, of Title 116, Chapter 1, V. A. C. S., dealing with the regulation and registration of motor vehicles. Under such title the state exacts a license or registration fee which is a privilege tax in the nature of a license or toll for the use of the highways of this state. Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 1, Sections 212, 213, 214. Article 6698 provides that license fees and certificates of registration required by the state shall be in lieu of all similar registrations, and that "no such registration fees or other like burdens" shall be required of the owner of any motor vehicle of any county, municipality or any other sub-division of the state. It further provides that such provision

shall not affect the right of incorporated cities and towns to license and regulate the use of motor vehicles for hire in such corporations, but nothing therein shall in anywise authorize any county or city to "levy and collect any occupation tax or license fee on motorcycles, motor vehicles, or motor trucks." That statute was enacted in 1917. Prior to its passage it was held that a municipality, under its police authority, might exact "fees" looking to the regulation of motor vehicles, such "fees" being designed to reimburse the municipality for the cost of maintaining its regulation under its police powers. Greene v. City of San Antonio, 178 S. W. 6, writ refused; Booth v. City of Dallas, 179 S. W. 301, writ refused. However, since the passage of Article 6698 the courts in numerous decisions have held that although a municipality may require a permit to operate motor vehicles on its streets, it cannot collect a fee or tax for the license or privilege of operating the same within a city or town. A B C Storage & Moving Co. v. City of Houston, 269 S. W. 882, writ refused; Ball v. City of McKinney, 286 S. W. 341, writ refused; City of Waco v. Grimes, 288 S. W. 1113, writ refused; Doeppenchschmidt v. City of New Braunfels, 289 S. W. 425, writ refused; City of El Paso v. Look, 288 S. W. 560, writ refused; City of Corpus Christi v. Texas Driverless Co. 144 Texas 288, 190 S. W. (2d) 484; Mahany on Texas Taxes, Section 28.07.

The taxicabs of petitioner are subject to and required to pay the state license or registration fee for the privilege of using the public highways of the state, which privilege, under our law, carries with it the right to use the streets of the City of Houston under such restrictions as the municipality may reasonably and lawfully impose. City of Arlington v. Lillard, 116 Texas 446, 294 S. W. 829; Ball v. City of McKinney, supra. The use made of the streets by petitioner is no different from that of the ordinary user except perhaps it is more frequent and is wholly in the prosecution of a private business. That distinction, however, does not authorize the additional charge made by the city. Under Art. 6675a-1, et seq., a taxicab is classified as a "Passenger Car" and the annual license fee for its registration by the state is based solely upon the weight of the vehicle. The use made of the taxicab has nothing to do with the fee exacted or the privileges accompanying the license. When such a vehicle is licensed by the state certain rights and privileges vest in the owner or operator which may be abridged by a municipality only in the manner authorized by law. In no event may a city enforce restrictions or regulations which are in conflict with the plain mandate of a legislative enactment.

It is clear from the provisions of the ordinance that it proposes to collect a license fee for the privilege of operating taxicabs upon the streets of Houston. One of the penalties for the non-payment of the fee is the forfeiture of the privilege of using the streets. The fact that it is denominated a rental charge does not militate against its true character as a license fee. It is no more or less than a privilege tax of the same character as that exacted by the state. Consequently, the city is attempting to invade the field which under Article 6698 is pre-empted and restricted to the state. City of Corpus Christi v. Texas Driverless Co., supra. The only lawful charge that may be made for the use of the streets by taxicabs is the license fee collected by the sovereignty. Any fee or "other like burden" for such license in addition thereto is expressly forbidden by Article 6698. Therefore, that portion of the ordinance assessing the street rental charge, and penalizing those who fail to pay it, is invalid and subject to the injunctive relief sought. The other portions of the ordinance are apparently enforceable, even to the extent that the city may reasonably, but not arbitrarily, refuse to issue a license for the use of the streets by taxicabs. We merely hold that the city may not lawfully charge a fee for any license issued by it nor penalize in any manner those who refuse to pay the fee.

We are supported in this descision not only by the above authorities from this state but by numerous cases from other jurisdictions where a statute by language analogous to ours purports to be exclusive on the assessment of license fees or other similar charges. Among those are the following: Anderson v. Wentworth, 75 Fla. 300, 78 So. 265; Buffalo v. Lewis, 192 N. Y. 193, 84 N. E. 809; Frisbie v. Columbus, 80 Ohio St. 686, 89 N. E. 92; Ex parte Shaw, 53 Okla. 654, 157 P. 900; Lincoln v. Dehner, 268 Ill. 175, 108 N. E. 991; Helena v. Dunlap, 102 Ark. 131, 43 S. W. 138; City of Waycross v. Bell, 169 Geo. 57, 149 S. E. 641; Eastern Ohio Transport Corporation v. City of Wheeling, 115 W. Va. 293, 175 S. E. 219; City of Pineville v. Meeks, 254 Ky. 167, 71 S. W. (2d) 33; Cox v. Brown, 218 N. C. 350, 11 S. E. (2d) 152; White Line Co. v. Brownsville, 91 Penn. Super. Ct. 46; 37 C. J. 184, Sec. 31 Id. 212, Sec. 65.

The question here involved was not presented in this court in the recent case of City of Wichita Falls v. Bowen, 143 Texas 45, 182 S. W. (2d) 695. The assessment therein was a gross receipts tax levied also as a rental charge for the use of the streets. The attack upon its validity was upon the theory that by an-

nexing new territory the city could not restrict or regulate the operation of motor vehicles for hire in the added territory because of the purported vested rights incident to the permit or franchise theretofore granted by the Railroad Commission of Texas. The tax was held valid under the attack thus made. We there expressed no opinion as to the legality of such a tax in the light of article 6698.

The judgments of both courts below are reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Opinion delivered July 10, 1946.

Rehearing overruled October 23, 1946.