## CITY OF TEMPLE v. MYERS.
### No. 9800.

Court of Civil Appeals of Texas. Austin.
May 18, 1949.

Byron Skelton, of Temple, for appellant.

Taylor & Taylor, by Henry Taylor, of Temple, for appellee.

GRAY, Justice.

On October 16, 1945, the City of Temple, Texas, passed and adopted an ordinance which, among other things, provided for the regulating and licensing of taxicabs and chauffers of taxicabs. The sections of the ordinance pertinent here are:

"Section 4. Licenses.

"(a) It shall be unlawful for any person to drive or to operate or to cause to be driven or operated any taxicab upon or over any street in the City of Temple unless there has been obtained for such taxicab a license duly issued by the Tax Assessor and Collector as hereinafter provided, which is in full force and effect."

"(j) All taxicab licenses shall be valid until the 1st day of January of the next ensuing year following the date they are issued; and all taxicab licenses issued during any year shall expire on December 31st of such year, and must be renewed on

January 1st of the following year by paying the Two Hundred and Fifty ($250.00) Dollar fee provided for herein and by complying with all the provisions of this ordinance."

"Section 9. Fees Required for Licenses.

"As a street rental fee for the usage of the streets of the City of Temple by taxicabs, and for the purpose of defraying the expenses necessary to provide surveillance, supervision and inspection of taxicabs, and to provide license tags, record books and to enforce the provisions of this Ordinance, a fee of Two Hundred and Fifty ($250.00) Dollars per annum for each taxicab shall be paid by the person to whom a license is issued, and all of such fee shall be collected by the assessor and collector of the City of Temple in advance at the time of the issuance of any license or renewal thereof. If a license is granted during a current year the fee shall be made pro rata for the balance of the year. All amounts received as fees under the provisions of this Ordinance shall be deposited in the 'General Fund' of the City."

Section 14 of said ordinance provided that the inspector of taxicabs should designate certain areas in downtown Temple for the loading and unloading of passengers, and, also, made it unlawful for taxicabs to load or unload passengers, in the designated downtown area, at places other than the designated places or in regular parking spaces.

On January 2, 1946, appellee, C. L. Myers, and his brother E. J. Myers, Jr., paid to the City of Temple $750 for three taxicab permits or licenses, and on January 10, 1946, paid $250 for a fourth permit or license. Appellee and his said brother thereafter operated a taxicab business as partners, until appellee acquired the interest of his brother in that business. On September 23, 1946, appellee transferred his business and the four taxicabs on which the above licenses were paid to J. B. Taylor, but expressly reserved to himself all causes of action which may have accrued against the City of Temple.

Appellee brought this suit against the City of Temple for a recovery of the $1000 paid for the four taxicab permits.

From a judgment awarding appellee the relief prayed for the City of Temple has appealed and, as we group its points, here complains of the action of the trial court because: (1) The fees charged for taxicab permits were legitimate charges by the City for the permanent occupation and appropriation of portions of the streets of the City to the exclusion of the general public; (2) the court erred in not sustaining the City's affirmative defense that the taxicab fees for permits were voluntarily paid; (3) the petition failed to allege and the evidence failed to show appellee ever presented his claim to the City for payment; (4) appellee having transferred the four taxicab permits to J. B. Taylor with the consent of the City, and the said J. B. Taylor, on February 26, 1947, having accepted, in writing, an ordinance passed by the City on February 25, 1947, and in said writing released the City from all demands and causes of action which he had by reason of the ordinance dated October 16, 1945, the claim of appellee against the City was thereby cancelled and released.

The evidence shows that in the downtown area of the City, as that area was designated by the inspector of taxicabs, there were at each street intersection, on the diagonally opposite corners, spaces exclusively reserved for and marked as loading and unloading zones for taxicabs.

Appellee testified that the license fees were paid because the ordinance required the payment of such fee for a permit to operate a taxicab, and because there was a penalty for a violation of the ordinance.

Appellee's pleadings alleged the City had no right to demand and require the payment of fees for the right to operate taxicabs within the City, and such fees being demanded by the City, the operator of such taxicabs forfeited the right and privilege to operate the same within the City unless such fees were paid.

The holdings of the Supreme Court in Crow et al. v. City of Corpus Christi, 146 Tex. 558, 209 S.W.2d 922, and Payne v. Massey, 145 Tex. 237, 196 S.W.2d 493, decided the questions presented by points one and two, and are ad-

verse to appellant's contention. The points are overruled.

To sustain its third point appellant relies on Sec. 28 of Art. IV of the charter of the City. We quote this section:

"Payment of Claims: No warrant for the payment of any claim shall be issued by the city, unless such claim shall be evidenced by an invoice or itemized account, and approved by the City Manager and audited and approved by the Comptroller, and all warrants shall be signed by the City Manager and countersigned by the Comptroller, except that warrants drawn upon the School Funds shall be signed by the chairman of the School Board and audited and allowed and countersigned by the Comptroller."

We find nothing in the section which requires the filing of a claim as a prerequisite for the filing of a suit against the City. The section merely provides the steps necessary to be taken before warrants of the City may be issued.

Section 8-2 of Art. III of the city charter provides that before the City shall be liable for damages for personal injuries, or for injuries to or for the destruction of property, notice shall be given to the City. This section can not be extended so as to include claims not within its terms. 30 Tex.Jur., p. 555, Sec. 307.

Because the claim here presented does not come within the above sections of the city charter, point three is overruled. The bill of sale from appellee to J. B. Taylor transferring the four taxicabs on which license fees had been paid, and in which bill of sale appellee reserved to himself all causes of action against the City, is dated September 23, 1946. The four taxicabs are described in the bill of sale, and appellee testified that the consideration received by him was for the purchase, by Taylor, of the four cars.

Appellee obtained the written consent of the City for his transfer of taxicabs to J. B. Taylor. (There being a provision in the ordinance of October 16, 1945, requiring that written consent of the City be obtained for the transfer of a taxicab license from one person to another.) On February 25, 1947, an ordinance was adopted repealing the ordinance of October 16, 1945, and requiring each grantee of a taxicab franchise to file a written acceptance of the taxicab franchise granted by the ordinance, and therein release the City from all claims and demands which the franchise grantee had against the City by reason of the ordinance of October 16, 1945. On February 26, 1947, J. B. Taylor filed such acceptance, and released the City from all claims which he had by reason of said 1945 ordinance, "including all claims and demands which I have or may have by reason of the payment of all taxicab license fees paid by me, or paid by any one else on any taxicab permit now held and owned by me, under the provisions of said prior taxicab ordinance."

Appellant says the bill of sale from appellee to J. B. Taylor was never shown or exhibited to the City, for which reason the reservation of claims against the City by appellee is void, and that the release by J. B. Taylor is effective to release the claim of appellee.

The release filed by J. B. Taylor was pursuant to an ordinance adopted after the execution of the bill of sale, and which expressly repealed the 1945 ordinance. If the bill of sale, as executed, did not meet the requirements of the then existing ordinance, such fact may have affected the transfer of the four taxicabs to J. B. Taylor, and, also, may have made him punishable by fine for their operation. However, we do not think the ordinance adopted in 1947 would affect the rights of appellee as those rights existed in 1946.

The trial court doubtless concluded the claim of appellee against appellant was not transferred to J. B. Taylor, and was therefore not released by him. Under the record before us, we see no error in his so holding.

The judgment of the trial court is affirmed.

Affirmed.